**Joshua PYE, Plaintiff**

v.

**OIL STATES ENERGY SERVICES, LLC, Defendant**

**CIVIL NO. SA–15–CA–678–OG**

United States District Court, W.D. Texas, San Antonio Division.

Signed January 12, 2017

Filed 01/13/2017

.

Josh Sanford, Sanford Law Firm PLLC, Little Rock, AR, for Plaintiff.

Jaime F. Cespedes, Pamela B. Linberg, William Robinson Stukenberg, Jackson Lewis, P.C., Houston, TX, William L. Davis, Jackson Lewis, P.C., Dallas, TX, for Defendant.

## ORDER

ORLANDO L. GARCIA, UNITED STATES DISTRICT JUDGE

On this date, the Court considered the report and recommendation of United States Magistrate Judge Pamela A. Mathy, filed in the above-styled and numbered cause on October 3, 2016 (Dkt. # 28) and Defendant's objections thereto (Dkt. # 31). The Court has conducted an independent review of the record and has reviewed the applicable law. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The Court concludes that Defendant's objections lack merit and the Magistrate Judge's recommendation should be accepted in its entirety.

It is therefore ORDERED that the Magistrate Judge's recommendation (Dkt. # 28) is ACCEPTED in its entirety; Plaintiff's motion for partial summary judgment (Dkt. # 16) is GRANTED; Defendant's motion for summary judgment (Dkt. # 17) is GRANTED as to willfulness, but otherwise DENIED.

It is further ORDERED that Defendant may not defend against overtime violations of the FLSA at trial by claiming the MCA exemption, under 29 U.S.C. § 213(b)(1), or the bona fide executive, administrative, or professional capacity exemptions, under 29 C.F.R. §§ 541.100, 541.200, 541.300; a two-year statute of limitations will be applicable, and any claims relating to events taking place before August 12, 2013 will be time-barred; and in any damages calculation, Defendant will not be entitled to an off-set for the salary paid to Plaintiff for time not worked.

This case will need a new trial setting, and a date for a pretrial conference. The pretrial conference will be held within thirty days from the date below, with a trial date the following week. The parties are instructed to discuss possible settlement

and advise the Court within five days from the date below whether they have reached a compromise and settlement. Otherwise, the case will proceed to trial.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PAMELA A. MATHY, UNITED STATES MAGISTRATE JUDGE

**TO: Honorable Orlando L. Garcia, Chief United States District Judge**

Pursuant to the orders of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and Rule 1 of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

## I. JURISDICTION

Plaintiff alleges federal question subject matter jurisdiction under the Fair Labor Standards Act ("FLSA") and 28 U.S.C. § 1331.[2]

## II. SUMMARY OF PROCEDURAL HISTORY AND CLAIMS

Plaintiff initiated this proceeding on August 12, 2014, by filing his original complaint, naming Oil States Energy Services, LLC, as the sole defendant.[3] Plaintiff asserts a single cause of action against defendant, alleging he was "deprived" of overtime compensation "for all of the hours over forty (40) per week in violation of the FLSA."[4] As relief, plaintiff seeks "declaratory judgment," "all unpaid overtime compensation," "liquidated damages .... in an equal amount as the amount of unpaid overtime compensation owed," "prejudgment interest," and "reasonable attorneys' fees, and all costs."[5] Plaintiff does not request a trial by jury.

On August 12, 2015, defendant filed its answer, asserting twenty-four defenses, without request for a trial by jury.[6] On November 9, 2015, the Court entered a scheduling order, which among other deadlines, set-forth a discovery deadline of May 24, 2016, and a dispositive motions deadline of July 8, 2016.[7]

On July 8, 2016, plaintiff filed a motion for partial summary judgment.[8] The same day, defendant filed a cross motion for complete summary judgment.[9] On July 22, 2016, plaintiff filed a response to defendant's motion[10] and defendant filed a re-

---

1. Docket no. 24 (Aug. 3, 2016); text-only order dated Sept. 12, 2016.

2. Docket no. 3 at 1–2.

3. Id. at 2.

4. Id. at 5.

5. Id. at 6.

6. Docket no. 5.

7. Docket no. 13.

8. Docket no. 16. Plaintiff submits three exhibits in support of his motion: Exhibit 1—deposition of Joshua Pye; Exhibit 2—job descriptions for the positions of crane operator, field

service supervisor I, field service supervisor II, and field service supervisor III; and Exhibit 3—order granting plaintiff's motion for summary judgment in Roche, et. al., v. S–3 Pump Service, Inc. et. al., 154 F.Supp.3d 441 (W.D. Tex. 2016). Id. exhibits 1–3.

9. Docket no. 17. Defendant submits an appendix including four exhibits in support of its motion: Exhibit A—deposition of Joshua Pye; Exhibit B—declaration of Derrin Benoit; Exhibit C—declaration of Bryan Johnston; and Exhibit D—unpublished cases. Id. exhibits A–D.

10. Docket no. 19. Plaintiff submits one exhibit in support of his response: Exhibit 1—declaration of Joshua Pye. Id. exhibit 1.

sponse to plaintiff's motion.[11] On July 29, 2016, plaintiff filed a reply to defendant's response.[12] On August 22, 2016, plaintiff filed a motion for leave to file supplemental response to defendant's motion for complete summary judgment regarding the issue of willfulness.[13] On August 29, 2016, defendant filed a response to plaintiff's motion for leave to file supplemental response.[14]

## III. STATEMENT OF UNDISPUTED FACTS

The following statement of facts is taken from plaintiff's complaint, defendant's answer, and the parties' briefing on plaintiff's motion for partial summary judgment and defendant's motion for complete summary judgment. Unless otherwise indicated, the parties do not dispute the following factual statements:

Defendant Oil States Energy Services, LLC ("Oil States" or "defendant") is a Texas limited liability company with a principal address in Houston, Texas, providing products and services in the oil and gas industry.[15] Oil States employed Joshua Pye ("Pye" or "plaintiff") between August 2013 and May 2015,[16] paying him on a salary basis,[17] initially as a tool operator,[18] then as a field service supervisor.[19] Plaintiff held a commercial driver's license ("CDL")[20] and drove defendant's vehicles—including crane trucks, 5500 trucks with gooseneck trailers, and Ford F–250 pick-up trucks—to customers' well sites in Texas, New Mexico, Louisiana, Mississippi, and Alabama.[21] Plaintiff asserts he "first went to Defendant's office location (hereinafter the 'yard') to load Defendant's vehicles" consisting of "a large crane, a 5500 truck with gooseneck trailer and a Ford F250 pick-up truck", then "set up" the "equipment used in the pumping of the wells" by "manuver[ing] the equipment into place" and using the "tools to secure the equipment."[22] After the "equipment was rigged up and operational, the operator monitored and operated the pressure valves on the equipment," when the equipment was "no longer needed, the crew Plaintiff belonged to 'rigged-down' the equipment" and transported the equipment and vehicles "back to the yard."[23] Defendant does not deny plaintiff performed the duties described, but asserts his primary duty was to serve "as the expert consultant to the operator on well

11. Docket no. 20. Defendant submits an appendix and four exhibits in support of its motion: Exhibit A—deposition of Joshua Pye; Exhibit B—declaration of Derrin Benoit; Exhibit C—declaration of Bryan Johnston; and Exhibit D—unpublished cases. Id. exhibits A–D.

12. Docket no. 23.

13. Docket no. 25. Plaintiff's supplemental response is attached to his motion. In support of his supplemental response, plaintiff submits three attachments: attachment 1—United States Department of Labor ("DOL") investigation documents; attachment 2—United States Securities and Exchange Commission list of subsidiaries of Oil States International, Inc.; and attachment 3—Texas Secretary of State business organizations inquiry information.

14. Docket no. 26.

15. Docket no. 3 at 2; docket no. 5 at 2.

16. Id.

17. Docket no. 3 at 2; docket no. 17 at 2.

18. Docket no. 20–5 at 19.

19. Id. at 21.

20. Docket no. 16 at 3; docket no. 17 at 1.

21. Docket no. 16 at 2; docket no. 20–4 at 6.

22. Docket no. 16 at 3.

23. Id. at 4.

pressure, provide recommendations to optimize performance of well pressure, and troubleshoot problems with the well pressure and well pressure equipment." [24]

## IV. ISSUES

- whether plaintiff's motion for partial summary judgment should be granted or denied.

- whether defendant's motion for complete summary judgment should be granted or denied.

- whether plaintiff's motion for leave to file supplemental response regarding the issue of willfulness should be granted or denied.

## V. SUMMARY OF STANDARDS

### A. Summary Judgment

 The standard to be applied in deciding a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part as follows:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. [25]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact. [26] A fact is material if it might affect the outcome of the lawsuit under the governing law. [27] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. [28] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. [29]

 The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact. [30] The burden then shifts to the party opposing the motion to present affirmative evidence to defeat a properly supported motion for summary judgment. [31] All facts and inferences drawn from those facts must be viewed in the light favorable to

---

**24.** Docket no. 17 at 1–2.

**25.** FED. R. CIV. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**26.** Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**27.** Id. at 248, 106 S. Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

**28.** Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

**29.** Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.

**30.** Rule 56(c)(1) provides:

Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
FED. R. CIV. P. 56(c)(1). See also Celotex, 477 U.S. at 323, 106 S.Ct. at 2552–53.

**31.** Anderson, 477 U.S. at 257, 106 S.Ct. at 2514–15.

the party resisting the motion for summary judgment.[32] "The court need consider only the cited materials, but it may consider other materials in the record." [33] Summary judgment motions permit the Court to resolve a lawsuit without the necessity of a trial if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[34] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." [35]

 If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." [36] The movant "must demonstrate the absence of a genuine issue of material fact,"

but does not have "to negate the elements of the nonmovant's case." [37] "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.[38] On the other hand, if the movant meets its burden and the non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[39] The Court may enter an order that does not grant all the relief requested by the motion, but states that "any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." [40]

 If the nonmovant cannot adequately defend against a motion for summary judgment, the remedy is a motion for relief under Rule 56(d), which provides:

**32.** Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007); Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993). The Supreme Court explained in Scott that:

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to [the] facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

550 U.S. at 380, 127 S.Ct. at 1776 (quoting FED. R. CIV. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–

87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Anderson, 477 U.S. at 247–48, 106 S.Ct. at 2510)) (emphasis in original).

**33.** FED. R. CIV. P. 56(c)(3).

**34.** See Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

**35.** FED. R. CIV. P. 56(c)(2).

**36.** Duffie v. United States, 600 F.3d 362, 371 (5th Cir.) (citing Celotex, 477 U.S. at 325, 106 S.Ct. at 2554) (internal punctuation omitted), cert. denied, 562 U.S. 897, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010).

**37.** Id.; Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

**38.** Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

**39.** FED. R. CIV. P. 56(e); Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111, 154 L.Ed.2d 34 (2002).

**40.** FED. R. CIV. P. 56(g).

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.[41]

Discovery motions under Rule 56(d) are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[42] To be entitled to a continuance of a summary judgment proceeding to obtain further discovery prior to a ruling on a motion for summary judgment, the party opposing the motion must demonstrate how additional time and discovery will enable the party to rebut the movant's allegations there are no genuine issue of material fact.[43]

## B. FLSA

"The FLSA establishes the general rule that employees must receive overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours during a seven-day workweek."[44] But, several categories of employees are statutorily exempt from the FLSA's overtime requirements.[45] Exemptions are defined in the Code of Federal Regulations.[46] "The decision whether an employee is exempt from the FLSA's overtime compensation provisions is primarily a question of fact; however, the ultimate decision whether the employee is exempt is a question of law"[47]—a "legal conclusion based on factual inferences drawn from historical facts" about plaintiff's employment.[48]

A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations[.][49]

41. See FED. R. CIV. P. 56(d).

42. Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (discussing Rule 56(f)) (internal punctuation omitted); Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006) (same); Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (explaining that under Rule 56(f), "[w]here the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (citation and internal punctuation omitted), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). See also Sapp v. Mem'l Hermann Healthcare Sys., 406 Fed.Appx. 866, 869 (5th Cir. 2010).

43. See Raby, 600 F.3d at 561 (request for stay "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion") (citations and internal punctuation omitted).

44. Gallegos v. Equity Title Co. of Am., 484 F.Supp.2d 589, 593 (W.D. Tex. 2007) (Biery, J.) (adopting recommendation of Mag. J. Primomo) (citing 29 U.S.C. § 207(a)).

45. See 29 U.S.C. § 213 (listing exemption categories).

46. See 29 C.F.R. part 541.

47. Gallegos, 484 F.Supp.2d at 593 (citing Lott v. Howard Wilson Chrysler–Plymouth, Inc., 203 F.3d 326, 330–31 (5th Cir. 2000)).

48. Dalheim v. KDFW–TV, 918 F.2d 1220, 1226 (5th Cir. 1990) (cited in Lott, 203 F.3d at 331).

49. 29 C.F.R. § 541.2.

" 'Exemptions under the FLSA are narrowly construed against the employer, and the employer bears the burden to establish a claimed exemption.' " [50]

## VI. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

#### 1. summary of arguments

In his motion, plaintiff seeks partial summary judgment regarding the "inapplicability" of the Motor Carrier Act ("MCA") exemption and the *bona fide* administrative, executive, and professional exemptions "which would excuse Defendant from fulfilling the FLSA's overtime responsibility." [51] With regard to the MCA exemption, plaintiff argues "he is a 'covered employee' under the TCA's [Technical Correction Act] exception to the MCA" [52] because he "performed numerous, meaningful and substantial work assignments and duties as a driver of a motor vehicle with gross vehicle weight rating of 10,000 pounds or less." [53] With regard to the administrative exemption, plaintiff argues the work he performed "was manual and physical" [54] and he "never worked in" the "functional areas" set forth in 29 C.F.R. § 541.201(b), that are "related to management or general business operations." [55] With regard to the executive exemption, plaintiff argues "Plaintiff's 'primary duty' did not involve managing Defendant or any 'customarily recognized department or subdivision thereof.' " [56] With regard to the professional exemption, plaintiff argues plaintiff's "primary duty did not require 'knowledge of an advanced type' "—"nothing more than a high school diploma was required to perform" his job for defendant.[57]

In response, with regard to the MCA exemption and TCA "covered employee" definition, defendant argues two main points. First, defendant argues the gross vehicle weight rating of its "pickup trucks" should be considered in addition to the "weight of the fuel tank, attached toolbox, and additional affixed to the pickups to determine the actual weight"—using a combined gross vehicle weight rating.[58] Second, defendant argues this Court should follow the "prevailing view" that the MCA exemption is applicable "so long as 'the time an employee spends operating commercial motor vehicles is more than *de minimis.*" [59] With regard to the administrative exemption, defendant argues three main points. First, defendant argues plaintiff was "paid at least $455 per week." [60] Second, defendant argues plaintiff's "primary duty was non-manual work directly related to the management or general business operations of Oil States." [61] Third, defendant argues plaintiff's job duties "involved the exercise of independent judgment and discretion." [62] With regard to the

50. Roche v. S–3 Pump Serv., Inc., 154 F.Supp.3d 441, 446 (W.D. Tex. 2016) (J. Rodriguez) (quoting Allen v. Coil Tubing Servs., L.L.C., 755 F.3d 279, 283 (5th Cir. 2014)). See also Vela v. City of Houston, 276 F.3d 659, 666 (5th Cir. 2001); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1137 (5th Cir. 1988).

51. Docket no. 16 at 1.

52. Id. at 10.

53. Id. at 19.

54. Id. at 8.

55. Id. at 8–9.

56. Id. at 7.

57. Id. at 9–10.

58. Docket no. 20 at 6.

59. Id. at 9.

60. Id. at 12 (title of subheading).

61. Id. (title of subheading).

62. Id. at 16 (title of subheading).

executive and professional exemption, defendant presents no responsive argument.

In reply, with regard to the MCA exemption, plaintiff argues using an "actual weight" analysis would be a "logistical nightmare"[63] and even if the Court considered the "actual weight" of the F–250 trucks with fuel and cargo, defendant has "failed to provide evidence regarding the actual weight of any F–250 driven by Plaintiff."[64] Further, plaintiff argues "[d]riving trucks over 10,000 pounds more than a *de minimis* amount does not preclude the TCA."[65] With regard to the administrative exemption, plaintiff argues two main responsive points. First, plaintiff argues defendant has provided no evidence to demonstrate plaintiff's primary duties were "non-manual tasks"[66] and "[t]here is no dispute that Plaintiff work[ed] to 'produce' the very service Defendant offers— the delivery and operation of oilfield equipment at Defendant's customer's well-sites."[67] Second, plaintiff argues defendant's "conclusory allegations" regarding plaintiff's discretion and independent judgment "are insufficient to allow a reasonable jury to determine that Plaintiff's job duties meet the third prong."[68]

#### 2. analysis
##### a. motor carrier exception

The Motor Carrier Act ("MCA") provides an exemption from the FLSA over-time provisions under 29 U.S.C. § 213(b)(1), stating, in relevant part, that the FLSA's overtime requirement "shall not apply … to … any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of" the MCA, regardless of whether the Secretary has exercised that authority.[69] But, the SAF-ETEA–LU Technical Corrections Act of 2008 ("TCA") permits "covered employees" to be entitled to overtime.[70] A "covered employee" is defined as "an individual:"

(1) who is employed by a motor carrier or motor private carrier . . . .

(2) whose work, in whole or in part, is defined—

(A) as that of a driver, driver's helper, loader, or mechanic; and

(B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . .; and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.[71] The employer has the burden to show "the applicability of the MCA exemption, including the effect of the TCA amendments."[72]

**63.** Docket no. 23 at 2.

**64.** Id.

**65.** Id. at 8.

**66.** Id. at 9.

**67.** Id. at 11–12.

**68.** Id. at 13.

**69.** 29 U.S.C. § 213(b)(1). Plaintiff presents no argument regarding whether the MCA exemption will preclude him from overtime if he is found not to be a "covered employee" under the TCA.

**70.** Aikins v. Warrior Energy Servs. Corp., No. 6:13-CV-54, 2015 WL 1221255, at *3–4 (S.D. Tex. Mar. 17, 2015) (citing Vanzzini v. Action Meat Distribs., Inc., 995 F.Supp.2d 703, 715 (S.D. Tex. 2014)) (internal quotation omitted).

**71.** SAFETEA–LU Technical Corrections Act of 2008, Pub.L. No. 110–244, §§ 305–06, 122 Stat. 1572, 160–21 (effective June 6, 2008).

**72.** Roche, 154 F.Supp.3d at 446.

With respect to the definition of "covered employee" under the TCA, the parties do not dispute that defendant is a motor private carrier, but do contest the applicability of the second and third elements. More specifically, with respect to the second and third elements, the parties dispute three main issues: (1) whether the Court should consider the gross vehicle weight rating or a combined weight rating of defendant's F–250 trucks;[73] (2) whether plaintiff's work "in whole or in part" of driving vehicles weighing in excess of 10,000 pounds more than a *de minimis* amount precludes TCA applicability; and (3) whether plaintiff's use of defendant's F–250 trucks qualifies as the performance of his work duties.[74]

### i. vehicle weight

Addressing the issue relating to the weight rating of defendant's F–250 trucks,[75] defendant argues the "true weight of the truck" should include the "empty" truck and "the weight of the fuel tank, attached toolbox, and additional items affixed to the pickups to determine the actual weight"—a gross combined vehicle weight rating.[76] In response, plaintiff argues the "consistent, objective standard" of the gross vehicle weight rating—not a combination rating, appropriately used to include a trailer and cargo—should be used.[77]

In *Roche v. S–3 Pump Service, Inc.*, Judge Rodriguez considered "how weight should be defined" and found the " 'actual weight' measurement does have an 'ordinary meaning' appeal," but the practical difficulty in using a combined weight rating "is that employers would be required to weigh trucks and loaded trailers on a regular basis to ensure that they may benefit from the exemption." [78] With "deference" to the DOL's guidance on the issue, the Court found a gross vehicle weight rating or a gross combined weight rating—"in the event that the vehicle is pulling a trailer"—to be applicable.[79] Thus, it is appropriate for this Court to utilize the same standard. Defendant presents no evidence or argument that its F–250 trucks were driven with attached trailers [80] and concedes that its "pickup trucks" had a gross vehicle weight rating "of 10,000 pounds or less," [81] which is supported by plaintiff's evidence.[82] Accordingly, there is no genuine issue of material fact that defendant's F–250 trucks have a gross vehicle weight rating of 10,000 or less.

73. Docket no. 20 at 6; docket no. 23 at 2.

74. Docket no. 16 at 20–21; docket no. 20 at 8–11; docket no. 23 at 3–8.

75. Docket no. 20 at 6; docket no. 23 at 2.

76. Docket no. 20 at 6. In support, defendant cites Glanville v. Dupar, Inc. and Garza v. Smith Int'l., Inc., regarding the calculation of a vehicle's "true weight," a combination of the vehicle weight and a trailer with cargo. No. H-08-2537, 2009 WL 3255292, *5 (S.D. Tex. Sept. 25, 2009) (discussing appropriate vehicle weight ratings of trucks towing trailers); No. C-10-100, 2011 WL 835820, at *4 (S.D. Tex. Mar. 7, 2011) ("the proper calculation is performed by adding the gross vehicle weight of the truck to the weight of the trailer and cargo").

77. Docket no. 23 at 2.

78. Roche, 154 F.Supp.3d at 447.

79. Id.

80. Plaintiff testifies "I generally drove the F–250 without a trailer attached." Docket no. 19–1 at 3.

81. Docket no. 20–1 at 5.

82. Plaintiff testifies "[t]he F–250 trucks I drove for Defendant were generally between 2010 and 2011 year models," and the gross vehicle weight rating "of a 2010 F–250 is between 8,800 and 9,600 pounds." Docket no. 19–1 at 3.

#### ii. work "in whole or in part"

Addressing the issue relating to whether plaintiff's work "in whole or in part" of driving vehicles weighing in excess of 10,-000 pounds more than a *de minimis* amount precludes the application of the TCA, defendant argues this Court should follow the alleged "prevailing view," and apply the MCA exemption "so long as the time an employee spends operating commercial motor vehicles is more than *de minimis*."[83] But, the argued "prevailing view" has been considered and rejected by district courts in this Circuit.[84] In Aikins v. Warrior Energy Services Corporation, Judge Costa in the Southern District of Texas concluded that the majority of courts addressing the issue have held "that any meaningful use of lighter vehicles entitles employees to overtime under the FLSA regardless of how often they also work with heavy trucks."[85] Seven months later, in Faniola v. Proteus Services, LLC, et al., Judge Miller in the Southern District of Texas held, "the TCA .... does not exclude a motor carrier employee from FLSA coverage merely because his or her work also involves operating heavier vehicles."[86] Judge Rodriguez of this Court, in part based on the his concurrence with the Southern District cases, also rejected the purported "prevailing view."[87]

Thus, the focus is not on how often plaintiff operated vehicles weighing an excess of 10,000 pounds, but rather whether plaintiff's work included, in part, the operation of trucks weighing 10,000 pounds or less, that is, defendant's F-250 trucks.[88] Plaintiff presents evidence of two distinct types of work he performed using defendant's F-250 trucks:

(1) plaintiff and his fellow employees drove defendant's F-250 trucks,"basical-

---

83. Docket no. 20 at 8 (citation omitted). Without any citation to evidence, defendant argues "Pye spent a great deal of time, and far in excess of *de minimis* time, loading and operating commercial motor vehicles on an interstate basis." Docket no. 20 at 9–10.

84. Aikins, 2015 WL 1221255, at *5.

85. Id. at *4.

86. Faniola v. Proteus Servs., LLC, et al., No. H-14-3081, 2015 WL 6666213, at *3 (S.D. Tex. Oct. 13, 2015).

87. Roche, 154 F.Supp.3d at 447–448. Judge Rodriguez stated:

> Given the language of section 306(c)(2), which states that a covered employee's work need only "in part" affect the safety of vehicles weighing 10,000 pounds or less, it is unsurprising that few courts have held that any substantial work on larger vehicles disqualifies an employee from the FLSA's overtime mandate .... A more plausible reading is that, in order to be owed overtime notwithstanding the MCA, an employee must both (1) perform some work that "affect[s] the safety of operation of" smaller vehicles, and (2) it must be part of the employee's "duties" to do so. The "duties" element may prevent *de minimis* or aberrational activities outside the scope of an employees' routine duties from qualifying an employee for TCA coverage. It does not state or imply, however, that covered employees cannot also have substantial duties involving larger vehicles. The Department of Labor has endorsed this view, noting in a guidance document that even in weeks where employees worked on vehicles weighing more than 10,000 pounds (and thus were subject to Department of Transportation regulation), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,-000 pounds. Hernandez v. Alpine Logistics, LLC, 2011 WL 3800031, at *5 (W.D.N.Y. Aug. 29, 2011) (discussing Department of Labor, Wage & Hour Division, Fact Sheet # 19 (Nov. 2009) available at http://www.dol.gov/whd/regs/compliance/whdfs19.pdf).
> Id. (citing Aikins, 2015 WL 1221255, at *5). See also McMaster v. E. Armored Servs., Inc., 780 F.3d 167, 170 n.4 (3d Cir. 2015) ("Whatever 'in part' means, it is certainly satisfied by [plaintiff], who spent 49% of her days on vehicles less than 10,000 pounds.")

88. Roche, 154 F.Supp.3d at 448.

ly every week"[89] to haul "a variety of hand tools such as hammers and wrenches," "necessary for working on the equipment used at the well site,"[90] "to and/or from Defendant's customers' well sites;"[91] and

(2) plaintiff used defendant's F–250 trucks to drive "between the well site and the hotel were the crew stayed."[92]

With respect to the first type of use of defendant's F–250 trucks, defendant argues that plaintiff did not perform work when he drove F–250 trucks between defendant's yard and customer well-sites. But, when "an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work."[93] Plaintiff testifies at least one member of the three to four person team[94] would drive "a F–250 to a location" while another member of the team drove the crane truck or "a 5500 flatbed pulling a gooseneck trailer."[95] The tools secured in the F–250 were "neces-sary for working on the equipment," and plaintiff's use of defendant's F–250 trucks was monitored by a "tattle tell" key fobs that tracked speed ("track[ed] your speeding"[96]), location ("where you're at all times"[97]), and the driver ("identified] the individual driving the F–250").[98] Because plaintiff hauled necessary tools and equipment, between defendant's yard and customer well sites—monitored by defendant—the Court cannot find plaintiff's use of defendant's F–250 trucks should be excluded as part of his day's work.

With respect to the second type of use of defendant's F–250 trucks, defendant argues "driving a pickup truck to and from a hotel or man camp is not 'work' " under the Portal-to-Portal Act.[99] But, travel that "keeps an employee away from home overnight" is "clearly worktime when it cuts across the employee's workday"[100] and "[a]ny work which an employee is required to perform while traveling must, of course, be counted as hours worked."[101] The Court cannot find the Portal-to-Portal Act[102] precludes this Court from finding

89. Docket no. 19–1 at 2.

90. Id.

91. Id. at 1. In his affidavit, plaintiff testifies: "I regularly drove a Ford F–250 [ ] to and/or from defendant's customers well sites," operating "the F–250 on public highways both in-state and out-of-state for defendant's business-related purposes" and "I drove the F–250 either part or all of the way, either to or from a job, basically every week that I was working for defendant." Id. at 1, 2. Plaintiff further testifies in his deposition: "I was driving the F250 on a regular basis." Docket no. 17–2 at 42; docket no. 20–2 at 42.

92. Docket no. 19–1 at 2.

93. 29 C.F.R. § 785.38.

94. Docket no. 20–2 at 21.

95. Id. at 13.

96. Id. at 41.

97. Id.

98. Docket no. 19–1 at 2.

99. Docket no. 20 at 10. The Portal-to-Portal Act excludes travel to and from home as "worktime" for employees who return to their home "at the end of the workday." 29 C.F.R. § 785.35. Defendant presents no evidence, given the nature and locations of plaintiff's job, that plaintiff could have returned home at the end of the workday.

100. 29 C.F.R. § 785.39.

101. 29 C.F.R. § 785.41.

102. To be clear, the Court's consideration of the Portal-to-Portal Act is only in regards to whether plaintiff qualifies as a "covered employee" under the TCA, without making any determination regarding an overtime damages calculation.

the team members' out-of-town work excluded the "shared" use of defendant's F–250 trucks [103] and the transportation of crew members between well-sites and the hotel or man camp, when all of plaintiff's jobs included hotel stays [104] and the option to use personal vehicles was "never given to" team members.[105]

 In sum, the Court cannot find that either the first or second type of use of defendant's F–250 trucks was outside the scope of plaintiff's work duties or that the uses were *"de minimis* or aberrational activities outside the scope of" his routine duties.[106] Accordingly, there is no genuine issue of material fact that plaintiff's work, in part, was that of a driver, affecting the safety of operation of non-commercial motor vehicles.

### iii. performance of duties in vehicles weighing 10,000 pounds or less

Addressing the issue of whether plaintiff's use of defendant's F–250 trucks qualifies as the performance of his work duties, defendant argues that "Pye's duties were to drive the overweight trucks and provide expertise on well site pressure to customers at the well site," not "driving the pickup truck, which was a convenience offered to the employees for purposes of commuting." [107] As discussed, the evidence

demonstrates plaintiff regularly drove defendant's F–250 trucks, monitored by defendant through the "tattle tell" key fob,[108] during the performance of his job duties by transporting necessary tools and equipment to/from customers' well sites and for employee transportation between the hotel/man camp and the well site, constituting work performance.[109] Accordingly, there is no genuine issue of material fact that plaintiff's duties included the use of defendant's F–250 trucks.[110]

### iv. conclusion

In sum, plaintiff's motion for partial summary judgment as to the MCA exemption should be granted on the ground there is no genuine issue of material fact that plaintiff qualifies as a "covered employee" under the TCA because he was employed by a motor private carrier; his work, in part, was that of a driver affecting the safety of operation of defendant's F–250 trucks, which are motor vehicles weighing 10,000 pounds or less; and the performance of his duties included the use of defendant's F–250 trucks. In reaching this conclusion, the Court determines defendant has not satisfied its burden to show "the applicability of the MCA exemption, including the effect of the TCA amendments." [111]

### b. administrative exemption

The FLSA overtime provision "does not apply with respect to any employee em-

**103.** Docket no. 20–2 at 21.

**104.** Id.at 14.

**105.** Id.

**106.** Roche, 154 F.Supp.3d at 447.

**107.** Docket no. 20 at 11.

**108.** Docket no. 19–1 at 2; docket no. 20–2 at 41.

**109.** 29 C.F.R. § 785.41.

**110.** Defendant argues "even if the TCA is applicable, the exemption is only lost for that workweek—not in its entirety" and because

plaintiff "has not proven which workweeks [for which] the MCA is applicable, a genuine issue of material fact precludes summary judgment." Docket no. 20 at 11. But, construing the statute, Judge Rodriguez held in Roche that "it is the employer's burden to demonstrate that [plaintiff] exclusively drove vehicles greater than 10,000 pounds during a workweek." Roche, 154 F.Supp.3d at 448. Defendant has not adduced evidence to show plaintiff exclusively drove vehicles weighing in excess of 10,000 pounds for any specific workweek.

**111.** Roche, 154 F.Supp.3d at 446.

ployed in a *bona fide* executive, administrative, or professional capacity."[112] Title 29, Code of Federal Regulations, § 541.200(a) provides a three-part test for determining the applicability of the exemption from overtime pay requirements for *bona fide* administrative employees, stating, in relevant part:

> The term "employee employed in a *bona fide* administrative capacity" ... shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[113]

As noted, defendant bears the burden to show plaintiff is exempt under the administrative exemption.

### i. first element: weekly salary of less than $455

Under 29 U.S.C. § 213(a)(1), an employee must be compensated on a weekly salary basis of not less than $455.[114] "An em-

ployee will be considered to be paid on a 'salary basis' .... if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation ...."[115] Defendant presents evidence that plaintiff's weekly salary exceeded $455.00 and plaintiff offers no argument or evidence in rebuttal.[116] Accordingly, there is no genuine issue of material fact that plaintiff's weekly salary exceeded $455.00.

### ii. second element: performance of office or non-manual work directly related to defendant's management or general business operations

The parties' briefing on the second element of the exemption addresses two main issues: (1) whether the nature of plaintiff's primary duties was non-manual; and (2) whether plaintiff's primary work was directly related to defendant's general business operations. An employee's primary duty is "the principal, main, major or most important duty that the employee performs,"[117] considering "all the facts in the case and with a particular emphasis on the characters of the employee's job as a whole."[118]

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> 29 C.F.R. § 541.700(a).

---

112. Gallegos, 484 F.Supp.2d at 593 (W.D. Tex. 2007) (citing 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.2).

113. 29 C.F.R. § 541.200(a).

114. See also 29 C.F.R. §§ 541.200(a)(1), 541.600, 541.602.

115. 29 C.F.R. § 541.602(a).

116. Plaintiff's "initial yearly based salary was $38,400.00" and his "last yearly based salary was $41,000.00." Docket no. 20–5 at 4.

117. 29 C.F.R. § 541.700(a). The regulations provide a number of relevant factors for the court to consider, including:

118. Miller v. Team Go Figure, L.L.P., No. 3:13-CV-1509-0, 2014 WL 1909354, at *10 (N.D. Tex. May 13, 2014) (citing 29 C.F.R. § 541.700(a)) ("The primary duty inquiry requires a court to 'determine the employee's chief or principal duty ... [T]he employee's primary duty will usually be what she does

With respect to the first issue, whether the nature of plaintiff's primary duties was non-manual, plaintiff argues he was hired as a "Tool Operator . . . was promoted to Field Service Supervisor 1 . . . and then to Field Service Supervisor 2"[119] and "was simply one member of a three or four-man crew who performed manual labor on-site at Defendant's customers' well-sites—loading equipment, traveling, setting up equipment, operating equipment, and taking down equipment."[120] Conversely, defendant argues plaintiff's "primary duties consisted of analyzing data outputs and readouts to determine appropriate action to control the pressure at these wells, maintaining logs of his activities for billing and reference, and conferring with the company man and other service companies regarding conditions and performance"— duties "of a non-manual nature."[121] In support, defendant submits the affidavit of Derrin Benoit, a district manager for defendant, and Bryan Johnston, an area manager for defendant, who generally describe plaintiff's duties to be that of a consultant.[122] Mr. Benoit further testifies:

> [plaintiff's] main priority was to analyze the data readouts of the tool to ensure the appropriate pressure was maintained, troubleshoot any issues concerning the tool that may arise, communicate any recommendations or issues to the company man, and that he had the independent authority to shut down the well should he detect a dangerous condition.[123]

■ Mr. Benoit's description of plaintiff's "main priority" is not a description of plaintiff's "primary duty." Although plaintiff may have performed the duties that Mr. Benoit testifies were plaintiff's "main priority," Mr. Benoit also testifies "Pye would load or help load the isolation tool and other necessary tools"—"[s]ecure loading of the isolation tool is of utmost importance to ensure the safety"[124]—and, in addition to "driving the F–150 truck," plaintiff was "expected to drive," "at any time, the "DOT–regulated trucks."[125] Mr. Johnston confirms plaintiff's loading responsibilities,[126] noting "secure loading of the tools is paramount to ensure the safety of the crew transporting the tools and of the general public driving on the highway."[127] Further, defendant's employee position summaries and plaintiff's resume—both of which reflect plaintiff's primary duties[128]—do not refer to consulting services, but rather, reflect plaintiff's primary duties include loading equipment, traveling, setting up equip-

that is of principal value to the employer, not the collateral tasks that she may also performs even if they consume more than half her time.").

119. Docket no. 16 at 2.

120. Id. at 7.

121. Docket no. 20 at 14 (citing Pye Dep., 72:13, Ex. 2; Benoit Dec. ¶ 12; Benoit Dec. ¶ 6).

122. Mr. Benoit testifies plaintiff's "duties were overwhelmingly about monitoring and troubleshooting the tools should there be an issue with the pressure in the well or wellhead." Docket no. 20–4 at 6. Mr. Johnston testifies plaintiff was "an exempt employee, providing consultation services to its custom-ers on well-sites concerning the isolation tool and grease unit tool, emphasizing plaintiff's duty to "monitor the pressure in the well based on gauge readouts on the unit" using "minimal physical exertion" to "equalize the pressure." Docket no. 20–5 at 10.

123. Docket no. 20–4 at 3.

124. Id. at 5.

125. Id.

126. Docket no. 20–5 at 6.

127. Id. at 7.

128. See Miller, 2014 WL 1909354, at *10.

ment, operating equipment, and taking down equipment—duties that are manual in nature.[129] Plaintiff's evidence, including defendant's position summaries[130] and plaintiff's affidavit,[131] further demonstrate plaintiff's primary duties were manual in nature, performed outdoors,[132] and "dangerous"[133] (requiring protective steel-toed boots, hard hats, and coveralls).[134] Accordingly, there is no genuine issue of material fact that plaintiff's primary duties were the performance of manual work.

With respect to the second issue, even if this Court were to find that plaintiff's primary duties were non-manual work, the Court must consider whether plaintiff's work is directly related to defendant's general business operations. "To qualify for the administrative exemption, 'an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.' "[135]

129. Defendant's field service supervisor I job description demonstrates the employee "must be able to frequently lift and move materials up to 50 pounds" and was to "oversee well site services," "install[ ], remove[ ] and maintain[ ] various types of wellhead oilfield equipment," provide "onsite labor when needed," "[o]perate open and/or casing hold 5k pressure control equipment," "[p]erform maintenance and repairs on company equipment," and "[d]rive company vehicles." Docket no. 20-5 at 22, 23. Consistent with his job description, plaintiff's resume—also introduced by defendant as evidence—demonstrates his employment experience with defendant concerned pressure control—"[w]ireline [s]upport, control, well pressure, rig up to customer wellhead, Perform Pre-and post trip on equipment"—and use of the isolation tool—"[i]solate wellhead pressure, perform pre-and post trip on equipment, rig up to customer wellhead." Id. at 25. The accuracy of the employment description is confirmed by Mr. Johnston who testifies "a description of Pye's duties in working with the isolation and grease unit is accurately reflected" in the position description. Id. at 4.

130. Defendant's position summaries state: (1) field service supervisor I: "Entry level position learning wireline and other oilfield equipment, including the basics of installation and setups of equipment;" and (2) field service supervisor II: "Works under minimum supervision to dress, maintain, and prepare wireline or other oilfield equipment in the shop and on location such as: cable head, and wireline cable splicing equipment." Docket no. 16-2 at 3, 5.

131. Plaintiff testifies:
- "I was responsible for the loading, transportation, set up, operation and disassembly of the equipment used at the well sites."
- "I would be responsible for the operation of the crane that set up the isolation unit."
- "As a Field Service Supervisor, I would either be on the ground or in a man-lift assisting with the set-up of the grease unit, communicating with the crane operator and Defendant's other employees to achieve the right placement of the grease unit."
- "[A]s a Tool Operator I was responsible for climbing onto the equipment and working on repair of the problem, which might involve having to take the valve off and replacing it."
- "Over the course of the job, the lubricator on the grease unit would need to be removed and placed back on to adjust for the wireline work, and I performed this work as a Field Service Supervisor."
- "I assisted in handling, moving and organizing these [five to eight, one-hundred feet long] hoses as a Tool Operator and as a Field Service Supervisor."

Docket no. 19-1 at 3-5.

132. Id. at 3.

133. Docket no. 20-2 at 20.

134. Id. at 42-43.

135. Zannikos v. Oil Inspections (U.S.A.), Inc., 605 Fed.Appx. 349, 353 (5th Cir. 2015) (citing 29 C.F.R. § 541.201(a)). See also Bollschweiler v. El Paso Electric Company, 166 F.Supp.3d 808, 813-14 (W.D. Tex. 2016) (courts "have interpreted the administrative

The "conceptual distinction between administration and production" is referred to as the administration-production dichotomy.[136] "[I]f a court determines that an employee generates, or 'produces' the product/service that the employer offers to the public, then that employee is a 'production' employee who cannot qualify for the administrative exemption."[137] The administrative/production dichotomy has only been determinative "when the work falls squarely on the production side of the line."[138]

[■] Defendant argues plaintiff performed "consulting services"[139] "[j]ust like the mud engineers in Dewan."[140] But, there are distinct differences in the duties of mud engineers discussed in Dewan and those of plaintiff, thus preventing the Court from finding the two analogous.[141] Rather, as plaintiff argues, the evidence indicates plaintiff worked "to 'produce' the very services Defendant offers—the delivery and operation of oilfield equipment at Defendant's customers' well-sites."[142] Instead of running defendant's business or influencing in its overall course or policies,[143] plaintiff generated the service de-

exemption to apply when an employee is engaged in 'running the business itself or determining its overall course or policies' as opposed to the mere 'day-to-day carrying out of the business'[s] affairs.'").

**136.** Bollschweiler, 166 F.Supp.3d at 812–13 (citation omitted). See McKeen–Chaplin v. Provident Savings Bank, FSB, No. 2:12-CV-03035-GEB-AC, 2015 WL 4873160, at *3 (E.D. Ca. Aug. 12, 2015) (citing Lutz v. Huntington Bancshares, No. 2:12-CV-01091, 2014 WL 2890170, at *8 (S.D. Ohio June 25, 2014)) ("Under the dichotomy, 'production employees (whose job it is to generate the product or service the business offers to the public) will not qualify for the exemption.' ").

**137.** McKeen–Chaplin, 2015 WL 4873160, at *3.

**138.** Id. (citing Bothell v. Phase Metrics, Inc. 299 F.3d 1120, 1127 (9th Cir. 2002)) (internal quotation omitted).

**139.** Docket no. 20 at 14.

**140.** Id. at 13. See Dewan v. M-I, L.L.C., 2016 WL 695717, at *28 (S.D. Tex. 2016).

**141.** In Dewan, mud engineers were prohibited from "rig work," performed no manual work, and spent "nearly all of their working time related directly to continually monitoring the mud for quality control." Dewan, 2016 WL 695717, at *21, *28, *31. The mud engineers' duties included consulting with customers by providing "advice and recommendations regarding problems and optimizing the mud system's operations that would then be implemented by production line

workers," choosing which "additives to introduce into the mud to attain the desired level of performance," and promoting and selling company products to customers. Id. at *22, *23. Not only did mud engineers perform non-manual duties, mud engineers were responsible for creating, maintaining, and monitoring the mud product and promoting additional products to customers, while plaintiff's duties concerned the performance of defendant's services—the "operation[ ] and delivery of oilfield equipment for pressure control services at its customers' well-sites." Docket no. 20–5 at 3. Further, mud engineers sold products to customers and worked as an on-site consultant, providing independent management of the mud performance, without mention of any duties similar to plaintiff whose responsibilities included loading, hauling, setting-up, performing maintenance and repairs, and dismantling oilfield equipment/machinery. Dewan, 2016 695717, at *22, *31. See docket no. 16–2 at 3, 5, 7; docket no. 19–1 at 3, 4, 5; docket no. 20–5 at 22, 23, 25.

**142.** Docket no. 23 at 12. The juxtaposition between defendant's argument regarding the MCA exemption that "[t]he evidence shows that Pye drove and/or loaded large trucks, trailers and cranes, which are the core business of what was being provided to customers at well sites" compared to defendant's argument regarding the administrative exemption that plaintiff's primary duty was a consultant, is not lost on the Court. Docket no. 20 at 9, 14.

**143.** See Bollschweiler, 166 F.Supp.3d at 813–14.

fendant offered to the public, thus falling squarely within the production side of the administrative/production dichotomy.[144] Accordingly, there is no genuine issue of material fact that plaintiff's work was not directly related to defendant's general business operations.

### iii. third element: exercise of discretion and independent judgment

■ Generally, the exercise of discretion and independent judgment "involves the 'comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." [145] "An employee need not exercise final decision-making authority to meeting this standard." [146] "Nevertheless, the exercise of discretion requires 'more than the use of skill in applying well-

established techniques, procedures or specific standards described in manuals or other sources." [147]

■ Defendant argues plaintiff exercised discretion and judgment "by analyzing data readout and evaluating the performance of the tool versus the drilling plan," and "was charged with evaluating the possible causes" if the tool was not "operating correctly," using "discretion, experience, and judgment." [148] Defendant seeks to analogize plaintiff's duties to that of mud engineers in <u>Dewan</u>, who "could deviate from and go outside" set parameters "when conditions required them to, thus affecting operating procedures." [149] Yet, defendant presents no evidence to demonstrate if plaintiff exercised any independent discretion or if his analysis and/or evaluation concerned only the use of skill in applying well-established tech-

---

144. <u>See</u> <u>McKeen–Chaplin</u>, 2015 WL 4873160, at *3.

145. <u>Zannikos</u>, 605 Fed.Appx. at 354 (citing 29 C.F.R. § 541.202(a)) (work performed by marine superintendents for an oil inspection company "did not extend beyond the application of skill in applying specified standards" set forth in extensive checklists that did not permit plaintiffs to evaluate "alternative courses of action after considering various possibilities"). <u>Compare</u> <u>Carbaugh v. Unisoft Int'l, Inc.</u>, No. H-10-0640, 2011 WL 5553724, at *21–*22 (S.D. Tex. Nov. 15, 2011) (finding plaintiff exercised discretion and independent judgment in demonstrating the complex software product to customers, consulting with clients to assess their needs and capabilities, installing and tailoring the software to suit clients' needs, troubleshooting problems, training clients, working with programers and coders to satisfy the clients' needs, and verifying software performance).

146. <u>Zannikos</u>, 605 Fed.Appx. at 354.

147. <u>Id.</u> (citing 29 C.F.R. § 541.202(e)).

148. Docket no. 20 at 17. Defendant's evidence demonstrates that field service supervisors I and field service supervisors II had the same requirement to "deal with problems involving

several concrete variables in standardized situations." Docket no. 16–2 at 3, 5, 7. The job responsibilities also required employees to abide by its safety and operation policies and procedures and have the ability to "read and interpret documents such as safety rules, operating and maintenance instructions and procedure manuals." <u>Id.</u> Plaintiff's responsibilities with regard to maintaining the proper pressure with the isolation tool seems to closely resemble ordinary inspection work outlined in the regulations, which includes "work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manual or other sources" with "some leeway in the performance of their work but only within closely prescribed limits." 29 C.F.R. § 541.203(g).

149. <u>Dewan</u>, 2016 WL 695717, at *31. Specifically, the Court found the mud engineers "first determin[ed] the condition of the mud in various locations," then decided "which of various additives and treatments of the mud or what tradeoffs would optimize drilling performance, i.e. considering and evaluating alternative courses of action, thus requiring them clearly to exercise discretion and independent judgment." <u>Id.</u>

niques, procedures or specific standards established by defendant.[150] Plaintiff testifies he "took direction from the company man" who "directed and authorized the actions" with "respect to the well and the equipments"[151] and with the "pressure information learned from the line boss"—in consideration of "parameters set by Defendant for how high the pressure could be"—if "the pressure went outside these parameters, [plaintiff] would open a bleed-off value by turning a handle on the equipment to relieve pressure."[152] Accordingly, there is no genuine issue of material fact that plaintiff's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

**150.** See Zannikos, 605 Fed.Appx. at 354. Defendant presents evidence that plaintiff "had the independent authority to shut down the well should he detect a dangerous condition." Docket no. 20-4 at 3. But, plaintiff's field service supervisor I position is described as "[e]ntry level." Docket no. 20-5 at 22. Defendant has not shown that all employees did not have the independent authority to shut down the well if the employee detected a dangerous condition.

**151.** Docket no. 19-1 at 6.

**152.** Id.

**153.** Docket no. 16 at 6. With regard to the executive exemption, plaintiff asserts there is no evidence that plaintiff performed any "management" duties, "customarily and regularly directed the work of two or more other employees," "was tasked with hiring or firing other employees," or "that his suggestion and recommendation as to hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight." Id. at 7. The executive exemption includes an employee who is:

(1) Compensated on a salary basis at a rate of not less than $455 per week ....;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

### iv. conclusion

In sum, plaintiff's motion for partial summary judgment as to the administrative exemption should be **granted** on the ground there is no genuine issue of material fact that plaintiff was not exempt from qualifying for overtime compensation under the administrative exemption.

### c. executive and professional exemptions

Plaintiff also seeks partial summary judgment as to the applicability of the executive exemption, under 29 C.F.R. § 541.100(a),[153] and the professional exemption, under 29 C.F.R. § 541.300(a).[154] Defendant presents no responsive argument or evidence to contravene plaintiff's

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

**154.** Docket no. 16 at 9. With respect to the professional exemption, plaintiff asserts his employment with defendant required "nothing more than a high school diploma" and his primary duties did not require him to have knowledge "of an advanced type in a field of science" or gained through "a prolonged course of specialized intellectual instruction," nor would his primary duty be that of a "creative professional." Id. The professional exemption includes an employee who is:

(1) Compensated on a salary basis at a rate of not less than $455 per week ....; and

(2) Whose primary duty is the performance of work:

(i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or

(ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300(a).

motion for partial summary judgment regarding either the executive or professional exemptions. Therefore, plaintiff's motion for partial summary judgment as to the executive or professional exemptions should be **granted** because there is no genuine issue of material fact that plaintiff was not an exempt executive or professional employee. In reaching this conclusion, the Court determines defendant has not satisfied its burden to show the applicability of the executive and professional exemptions.

## B. Defendant's Motion for Complete Summary Judgment

Defendant moves for complete summary judgment on: the applicability of the MCA exemption; the applicability of the administrative exemption; willfulness as it relates to the limitations period, and defendant's entitlement to offset. Defendant's motion for complete summary judgment, in large part, reflects the same arguments, evidence, and citation to authority included within its response to plaintiff's motion for partial summary judgment.[155]

### 1. MCA exemption and administrative exemption

In effect, plaintiff and defendant have filed cross motions for summary judgment on the MCA and administrative objections. With respect to defendant's motion for summary judgment on the MCA and administrative exemptions, defendant has the both the burden to show the exemption applies and the ultimate burden to show no genuine issue of material fact exists on its request for entry of judgment. For the reasons discussed, plaintiff's motion for partial summary judgment as to the MCA exemption should be granted on the ground there is no genuine issue of materi-

al fact that plaintiff qualifies as a "covered employee" under the TCA because he was employed by a motor private carrier; his work, in part, was that of a driver affecting the safety of operation of defendant's F-250 trucks, which are motor vehicles weighing 10,000 pounds or less; and the performance of his duties included the use of defendant's F-250 trucks. Further, for the reasons discussed, plaintiff's motion for partial summary judgment as to the administrative exemption should be granted on the ground there is no genuine issue of material fact that plaintiff was not exempt from qualifying for overtime compensation under the administrative exemption because, in sum, although plaintiff's weekly salary exceeded $455.00, plaintiff's primary duty was the performance of manual work; his work was not directly related to defendant's general business operations; and plaintiff's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance. For the same reasons plaintiff has demonstrated there is no genuine issue of a material fact such that judgment should be entered in favor of plaintiff with respect to the MCA and administrative exemptions, defendant has not met its burden to show no genuine issue of material fact exists on its request for entry of judgment. Accordingly, defendant's motion for summary judgment on the MCA and administrative exemptions should be **denied**.

### 2. willfulness

As an initial matter, after filing his response to defendant's motion for summary judgment, plaintiff filed a motion for leave to file a supplemental response on August 22, 2016, "to present newly-discovered evidence" after receiving responsive documents to a Freedom of Infor-

---

**155.** See docket nos. 17, 20. Defendant did not file a reply brief to rebut plaintiff's response to its motion.

mation Act request from the DOL on August 15, 2016.[156] In opposition, defendant argues "Plaintiff failed to timely produce the evidence" and "[g]ranting leave is futile because the purposed evidence is not relevant."[157] Upon "motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading ...."[158] Given the date plaintiff received the evidence at issue,[159] the Court finds good cause exists for his inability to previously disclose the same during the discovery period, which ended May 24, 2016.[160] Further, although defendant maintains the documents are "not relevant,"[161] the Court disagrees. Earlier violations of the FLSA that would put an employer on actual notice of the requirements of the FLSA have been deemed sufficient to support an inference of willfulness.[162] DOL investigation documents could demonstrate defendant had actual knowledge of its misclassification of plaintiff as an exempt employee under the administrative exemption, making the evidence relevant to the issue of willfulness. Accordingly, plaintiff's motion to supplement is **granted.**

"FLSA claims are subject to a two-year statute of limitations for ordinary violations and a three-year period for willful violations."[163] The burden to prove willfulness rests upon the plaintiff.[164] "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable."[165] "Rather, an employer's violation is willful only if it 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"[166] "In general, to show reckless disregard of the FLSA, an employee must show that the employer had some reason to know that its conduct violated the FLSA beyond mere ignorance of the law."[167] "If an employer has received actual knowledge of FLSA requirements from

---

**156.** Docket no. 25 at 1–2.

**157.** Id. at 2, 3 (titles of subheadings).

**158.** FED. R. CIV. P. 15(d).

**159.** The Court finds no reason to doubt plaintiff did not receive the DOL documentation until August 15, 2016—the time stamp at the bottom of the compliance action report indicates the documents were printed/retrieved, presumably by a DOL representative, on August 3, 2016. Docket no. 25–2 at 1–3, 10–11.

**160.** Docket no. 13 at 1.

**161.** Docket no. 26 at 3.

**162.** Solano v. Ali Baba Mediterranean, No. 3:15-CV-0555-G, 2016 WL 808815, at *5 (N.D. Tex. Mar. 2, 2016) (citation omitted).

**163.** Zannikos, 605 Fed.Appx. at 360 (citing 29 U.S.C. § 255(a)).

**164.** Id. (citing Cox v. Brookshire Grocery Co., 919 F.2d 354, 356 (5th Cir. 1990)).

**165.** Id. (citation omitted) ("An employer who acts without a reasonable basis for believing

that it was complying with the FLSA is merely negligent.").

**166.** Id. (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1682, 100 L.Ed.2d 115 (1988)). See also Lipnicki v. Meritage Homes Corp., No. 3:10-CV-605, 2014 WL 923524, at *9 (S.D. Tex. Feb. 13, 2014) (citation omitted) (" 'Willful' is synonymous with 'voluntary,' 'deliberate,' and 'intentional,' and 'refer[s] to conduct that is [not] merely negligent.").

**167.** Mohnacky v. FTS Intern. Servs., LLC, No. SA-13-CV-246-XR, 2014 WL 4967097, at *6 (W.D. Tex. Oct. 2, 2014) (citing Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1416 (5th Cir. 1990) (additional citation omitted). The following evidence has been found sufficient to support an inference of willfulness:

(1) admissions that an employer knew its method of payment violated the FLSA prior to the accrual of the action;

(2) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA;

a prior DOL investigation, a reasonable jury could conclude that the employer acted in reckless disregard of the FLSA in subsequent violations." [168]

Here, potential FLSA violations occurred outside of the default two-year limitation period because plaintiff's employment began in July 2013 [169] and his complaint was filed on August 12, 2015. [170] All claims for events taking place before August 12, 2013 could be time-barred. [171] Plaintiff argues defendant "has specific knowledge regarding the requirements of the administrative exemption as well as

> (3) earlier violations of the FLSA that would put the employer on actual notice of the [r]equirements of the FLSA;
> (4) failure to keep accurate or complete records of employment;
> (5) prior internal investigations which revealed similar violations.

Solano, 2016 WL 808815, at *5 (citations omitted).

**168.** Solano, 2016 WL 808815, at *5. See also Sealey v. EmCare, Inc., No. 2:11-CV-00120, 2013 WL 164040, at *4 (S.D. Tex. Jan. 14, 2013) (finding defendants had "expansive knowledge of the FLSA and DOL regulations relating to the payment of overtime" when plaintiffs introduced evidence that defendants engaged in previous litigation concerning overtime pay for similar "midlevel practitioners of healthcare").

**169.** Plaintiff's offer of employment letter for the position of tool operator is dated July 12, 2013 and was signed by plaintiff on July 18, 2013. Docket no. 20–5 at 19.

**170.** Docket no. 3.

**171.** See Solano, 2016 WL 808815, at *5 (citing Halferty v. Pulse Drug Co., Inc., 821 F.2d 261, 271 (5th Cir. 1987) ("noting that, generally, each incorrect paycheck is a separate violation under the FLSA and that each violation must be considered separately for purposes of calculating the statute of limitations").

**172.** Docket no. 25–1 at 4.

**173.** Docket no. 25–3 at 1. Specifically, the DOL reports demonstrate that OSI was inves-

the proper method of analyzing exemption elements" [172] because the DOL conducted three FLSA violation investigations concerning Oil States Industries ("OSI"), a subsidiary of defendant's parent company, Oil States International, Inc. ("parent corporation"). [173] Specifically, plaintiff seeks to impute knowledge from OSI to defendant based upon four alleged common corporate officers, including Lias J. Steen ("Steen") who served as the parent corporation's senior vice president and "in both a human resources and legal capacity," and as secretary to OSI and defendant. [174]

tigated on at least three occasions: (1) in 2014, concerning, in part, overtime violations for a marketing specialist, costs account, and buyer; (2) in 2008, regarding overtime and record keeping violations "due to the time clock making improper deductions;" and (3) in 2004, for overtime and record keeping violations concerning manufacturing coordinators and estimators. Docket no. 25–2 at 6, 7, 13. At the conclusion of each investigation, OSI agreed to comply with the DOL directives and pay back wages owed. Id. at 1, 5.

**174.** Docket no. 25–4 at 1, 3, 4. Plaintiff's submission of Secretary of State records demonstrate four common officers and/or management personnel between the parent corporation, defendant and OSI. Docket no. 25–4 at 1, 3, 4. For the parent corporation, as of January 13, 2015, Steen serves as a senior vice president and under the title of "human resources" and "legal," Lloyd A. Hajdik ("Hajdik") serves as a senior vice president, chief financial officer and treasurer, Alina Choun ("Choun") serves as assistant secretary, and Clinton H. Wood ("Wood") serves assistant treasurer. Id. at 1. For defendant, as of January 29, 2016, Hajdik serves as vice president and treasurer, Steen servers as secretary, Choun serves as vice president of tax, and Wood serves assistant treasurer. Id. at 3. For OSI, as of January 13, 2015, Hajdik serves as vice president, assistant secretary and treasurer, Steen servers as secretary, Choun serves as vice president of tax, and Wood serves assistant secretary and treasurer. Id. at 4, 5. In the 2014 DOL investigation summary, only two of the four common officers are referenced—Steen is listed as the

Although there appears to be some overlap in time between the 2014 DOL investigation and Steen's position with the parent corporation in "human resources" and "legal," the evidence is unclear[175] and there is no indication that Steen or other common corporate officers had any involvement with the DOL investigations or defendant's classification of plaintiff as an exempt employee.[176] Further, plaintiff has presented no authority demonstrating an employer may be deemed to have actual knowledge as a result of prior DOL investigations into a separate, but related, business entity. Nor has the plaintiff demonstrated defendant had reason to know its classification of plaintiff as exempt was improper[177] based on DOL investigations regarding employees who are not tool operators or field service supervisors.[178] Therefore, the knowledge derived from the DOL investigations into OSI's mis-classifications is too attenuated for the Court to find knowledge should be appropriately imputed to defendant.[179] Accordingly, defendant's motion for summary judgment as to the issue of willfulness should be **granted** on the ground that plaintiff has not raised a genuine issue of material fact to show defendant acted willfully in allegedly violating the FLSA.

### 3. offset

Defendant asks the Court to find that "if Pye is deemed non-exempt, Oil States is entitled to an offset for all salary paid for time not worked," arguing defendant would "not have made these payments" if plaintiff had been paid on an hourly basis.[180] In response, plaintiff argues defendant did not overpay or pre-pay plaintiff; rather, defendant "seeks to have this Court go back in time and alter its compensation system."[181]

The United States Court of Appeals for the Fifth Circuit "look[s] with disfavor on set-offs unless the money being set-off can be considered wages that

---

OSI secretary and Wood as the assistant treasurer. Docket at 25–2 at 5.

175. Id. at 1. In the DOL investigation summary—indicating the investigation was "registered" on March 20, 2014—Steen is designated as OSI's secretary, without indication of his dates of service. Docket no. 25–2 at 5.

176. Docket no. 25–1 at 1; docket no. 26 at 5. See also docket no. 25–3 at 1.

177. See Mohnacky, 2014 WL 4967097, at *6.

178. The 2014 investigation concerned the classification of a marketing specialist, cost accountant, and buyer as exempt. Docket no. 25–2 at 6. The 2008 investigation concerned violations due to the "time clock making improper deductions from employees' hours worked." Id. at 5. The 2004 investigation concerned the classification of manufacturing coordinators and estimators as exempt. Id. at 13. Thus, the Court cannot find defendant has previously been involved with a "closely related overtime issue." Sealey, 2013 WL 164040, at *4.

179. An additional issue not addressed by either party is whether plaintiff must demonstrate willfulness as to both the administrative exemption and MCA exemption. The parties' summary judgment briefing addresses both exemptions, but the Court cannot determine if a single exemption—perhaps only the MCA—was used to calculate plaintiff as an exempt employee. The position description for the field service supervisor I and field service supervisor II positions includes an undefined FLSA "exempt" status designation. Docket no. 16–2 at 3, 5. Further, defendant's answer does not distinguish between the MCA and administrative exemption, only stating the affirmative defense that "Plaintiff is exempt from the overtime requirements of the FLSA." Docket no. 5 at 4. But, because plaintiff has not satisfied its burden to demonstrate willfulness as to the administrative exemption, the Court need not decide whether plaintiff must prove willfulness as to a single exemption or as to both exemptions.

180. Docket no. 17 at 18–19.

181. Docket no. 19 at 30.

the employer pre-paid to the plaintiff-employee"[182] and "set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions."[183] The Fifth Circuit observed that the "only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards," thus to "clutter [FLSA] proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act."[184]

■ Here, defendant has not demonstrated the pre-payment exception should apply. Defendant argues this case is the "same" as Allen v. Entergy Operations Inc., where the court held "pursuant to Louisiana law, if the MIP [bonus] payments to Plaintiffs were made in error, they must be returned," but, neither the Louisiana law nor the court's corresponding legal analysis is relevant here.[185] An analogous case may be found in Vizcaino v. Techcrete Contracting, Inc., when the court rejected defendant's attempt to receive a credit/offset for periods of time in the employee had been incapacitated/not working or worked part-time while earning a full-time salary,[186] finding the "supposed overpayments to [the employee] were not pre-payments of Defendants' overtime obligations."[187] Like the defendants in Vizcaino, defendant seeks an offset for compensation paid to plaintiff for "workweeks when no work was performed."[188] Because defendant's request does not fall within the pre-payment exception, the Court cannot find an offset is proper and defendant's motion for summary judgment as to the issue of offset should be **denied.**

## VII. RECOMMENDATIONS and ORDERS

Based on the foregoing, it is **recommended** that:

- plaintiff's motion for partial summary judgment[189] be **GRANTED;** and
- defendant's motion for complete summary judgment[190] be **GRANTED in part** and **DENIED in part** as discussed.

Further, it is **ordered** that:

- plaintiff's motion for leave to file supplemental response regarding the is-

---

**182.** Martin v. PepsiAmericas, Inc., 628 F.3d 738, 742 (5th Cir. 2010) (reversing the district court's order permitting a set-off for the value of goods the employer had furnished to its employees). A specific pre-payment exception was established in Singer v. City of Waco when the Fifth Circuit upheld "set-off overpayments in some work periods against shortfalls in others" for firefighters compensated equal amounts for a 96–hour workweek and a 120–hour workweek because the set-off "simply acknowledged that the City had *already paid* the bulk of its overtime obligations." 324 F.3d 813, 828 (5th Cir. 2003) (emphasis in original).

**183.** Martin, 628 F.3d at 741 (citing Brennan v. Heard, 491 F.2d 1, 2 (5th Cir. 1974)).

**184.** Id.

**185.** Allen v. Entergy Operations Inc., 163 F.Supp.3d 324, 335–36 (E.D. La. 2016) (specifically finding Louisiana Civil Code article 2299 requires "[a] person who has received payment or a thing not owed to him is bound to restore it to the person from whom he received it").

**186.** Vizcaino v. Techcrete Contracting, Inc., No. A-13-CA-229-SS, 2014 WL 819449, at *1, *3 (W.D. Tex. Mar. 3, 2014).

**187.** Id.

**188.** Docket no. 17 at 18. Defendant argues "Pye was paid a salary even for workdays when he did not work at all, and Oil State only paid him that salary because he agreed that he was exempt." Id. at 2.

**189.** Docket no. 16.

**190.** Docket no. 17.

sue of willfulness[191] is **GRANTED**; and

- the limited matters referred to the undersigned having been addressed, the case is returned to the District Judge.

If each of the recommendations set out in this report are accepted by the District Judge:

- defendant may not defend against overtime violations of the FLSA at trial by claiming the MCA exemption, under 29 U.S.C. § 213(b)(1), or the *bona fide* executive, administrative, or professional capacity exemptions, under 29 C.F.R. §§ 541.100, 541.200, 541.300;

- a two-year statue of limitations will be applicable, any claims relating to events taking place before August 12, 2013 will be time-barred; and

- in any damages calculation, defendant would not be entitled to an off-set for the salary paid to plaintiff for time not worked.

## VIII. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User. As provided in 28 U.S.C. § 636(b)(1) and FED.

R. CIV. P. 72(b), any party who desires to object to this report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the report and recommendation within **14** days after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report will bar the party from receiving a *de novo* determination by the District Court.[192] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[193]

---

191. Docket no. 25.

192. See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

193. Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).