**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 14-1010

———————————

ASHLEY MCMASTER,

Appellee

v.

EASTERN ARMORED SERVICES, INC.,

Appellant

———————————

On Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 11-5100)
District Judge: Honorable Michael A. Shipp

———————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 23, 2014

Before: FUENTES, GREENBERG, and COWEN, *Circuit
Judges*

(Opinion Filed:  March 11, 2015)

Mark Justin Gottesfeld

R. Andrew Santillo
Peter D. Winebrake
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025

*Attorneys for Appellee*

Christina Vassilou Harvey
Lomurro, Davison, Eastman & Munoz
100 Willow Brook Road
Building 1, Monmouth Executive Center
Suite 100
Freehold, NJ 07728

*Attorney for Appellant*

_____

OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*:

The Fair Labor Standards Act requires most employers to pay overtime wages to hourly employees. While professional motor carriers are generally exempt from this requirement, a recent Act of Congress waives the exemption for motor carrier employees who, in whole or in part, drive vehicles weighing less than 10,000 pounds. Because the plaintiff, Ashley McMaster, falls within this carveout, we will affirm the District Court's determination that she was entitled to overtime.

**I.**

Ashley McMaster worked for Eastern Armored Services, Inc. ("Eastern") from approximately March 2010 until June 2011. As its name suggests, Eastern is an armored courier company, and its fleet of armored vehicles operates across several states in the mid-Atlantic region. McMaster was a driver and/or guard for Eastern, which meant that some days she was assigned to drive an armored vehicle, while other days she rode as a passenger to ensure safety and security. McMaster was not assigned to one specific vehicle. Rather, her vehicle assignment changed according to the particular needs of a given day's transport. As it happened, McMaster spent 51% of her total days working on vehicles rated heavier than 10,000 pounds, and 49% of her total days working on vehicles rated lighter than 10,000 pounds. She was paid by the hour, and she frequently worked more than 40 hours in a given week. For all hours worked, she was paid at her regular rate. In other words, she was not paid overtime.

After McMaster left Eastern, she filed the instant federal action claiming that the Fair Labor Standards Act required Eastern to pay her overtime wages when she worked more than 40 hours in a week. The parties certified a conditional class of similarly situated employees, *see* 29 U.S.C. § 216(b), and proceeded to limited discovery on McMaster's claim only. The parties then cross-moved for summary judgment. Their dispute centered on whether Eastern was exempt from paying overtime to McMaster under a provision of the Fair Labor Standards Act known as the Motor Carrier Act Exemption. According to Eastern, McMaster fell within the exemption and was thus not entitled to overtime. According to McMaster, she fell within an exception to the exemption enacted by Congress prior to her employment.

The District Court granted McMaster's motion, denied Eastern's motion, and entered an order that McMaster was eligible to be paid overtime wages for all hours she worked over 40 in a given workweek. This interlocutory appeal followed on certification of the District Court, *see* 28 U.S.C. § 1292(b), which recognized that other district courts have embraced Eastern's arguments. In the briefs before us, Eastern renews its contention that McMaster is ineligible for overtime because of the Motor Carrier Act Exemption.[1]

## II.

Section 7 of the Fair Labor Standards Act provides that employers must pay hourly employees 150% their typical wages on hours they work in a week over 40.[2] *See* 29 U.S.C.

---

[1] Eastern's alternative argument—that McMaster was entitled to overtime only for those workweeks in which she actually performed work on vehicles lighter than 10,000 pounds—was not presented to the District Court and is therefore deemed waived. *See Tri–M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011).

[2] We have jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 1292(b). The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331.

We review a district court's grant of summary judgment de novo. *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 275 n.7 (3d Cir. 2011). In doing so, we apply the same standard as the district court. *Id*. That is, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether summary judgment is warranted, we "must view the facts in

§ 207; *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir. 2005). One exemption to this general rule is Section 13(b)(1) of the Act. Known as the Motor Carrier Act Exemption, the provision provides that overtime pay is not required for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." *See* 29 U.S.C. § 213(b)(1); *see also* 49 U.S.C. §§ 31502(b), 13102 (defining scope of Secretary of Transportation's regulatory authority).

Congress elaborated upon the Motor Carrier Act Exemption with the enactment of the Corrections Act of 2008.[3] Section 306(a) of the Corrections Act provides that "Section 7 of the Fair Labor Standards Act . . . shall apply to a covered employee notwithstanding section 13(b)(1) of that Act." *See* Corrections Act, § 306(a). Section 306(c) of the Corrections Act defines the term "covered employee." In short, a "covered employee" is an employee of a motor carrier whose job, "in whole or in part," affects the safe operation of vehicles lighter than 10,000 pounds, except vehicles designed to transport hazardous materials or large numbers of passengers. Corrections Act § 306(c).

McMaster's job placed her squarely within the Corrections Act's definition of a "covered employee." McMaster was a driver and guard of commercial armored vehicles, and approximately half of her trips were on vehicles

---

the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Doe*, 653 F.3d at 275 n.7.

[3] SAFETEA–LU Technical Corrections Act of 2008, PL 110-244, June 6, 2008, 122 Stat. 1572.

undisputedly lighter than 10,000 pounds.[4] Her daily routes included interstate trips on public roadways, and none of the vehicles were designed to transport eight or more passengers or used to transport hazardous materials. And her employer, Eastern, is by its own admission a motor carrier. The critical issue, then, is the significance of being a "covered employee" when determining a motor carrier employee's entitlement to overtime.

It is well-established that, "[w]here the text of a statute is unambiguous, the statute should be enforced as written and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 (3d Cir. 2011). As stated above, the relevant language of the Corrections Act is that, as of June 6, 2008, "Section 7 of the Fair Labor Standards Act of 1938 . . . shall apply to a covered employee notwithstanding section 13(b)(1) of that Act." Corrections Act § 306(a). This is a plain statement that a "covered employee" is to receive overtime even where section 13(b)(1)—the Motor Carrier Act Exemption—would ordinarily create an exemption. We see no plausible alternative construction, and neither Eastern nor any of the authorities it cites attempt to offer one. Nor does Eastern point to legislative history probative of a drafting error. *Cf. Murphy*, 650 F.3d at 302. Statutory construction points to one conclusion: "covered employees" are entitled to

---

[4] We need not now affix a firm meaning to the term "in part." Whatever "in part" means, it is certainly satisfied by McMaster, who spent 49% of her days on vehicles less than 10,000 pounds.

overtime.

District courts considering the plain language of the Corrections Act have reached the same conclusion. *See, e.g.*, *McMaster v. E. Armored Servs., Inc.*, 2013 WL 1288613, at *1 (D.N.J. 2013); *Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1260 (D. Idaho 2013); *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, 2012 WL 3962935, at *4 (S.D. Fla. 2012); *Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, at *9 (E.D. Pa. 2009); *Botero v. Commonwealth Limousine Serv. Inc.*, 2013 WL 3929785, at *13 (D. Mass. 2013); *O'Brien v. Lifestyle Transp., Inc.*, 956 F. Supp. 2d 300, 307 (D. Mass. 2013). So, too, the Department of Labor, in a post-Corrections Act Field Bulletin entitled "Change in Application of the FLSA § 13(b)(1) 'Motor Carrier Exemption.'" *See* Department of Labor Field Bulletin, *available at http://www.dol.gov/whd/fieldbulletins/fab2010_2.htm*. ("Section 306(a) extends FLSA Section 7 overtime requirements to employees covered by [Corrections Act] Section 306(c), notwithstanding FLSA Section 13(b)(1).").

Our sister courts of appeals have yet to weigh in squarely on whether a Corrections Act "covered employee" is entitled to overtime, but the Fifth and Eighth Circuits have noted the plain language of the Corrections Act, too.

In *Allen v. Coil Tubing Servs., L.L.C.*, the Fifth Circuit addressed a motor carrier employee's argument in an interlocutory appeal that her lack of interstate driving placed her outside the ambit of the Motor Carrier Act Exemption. *See* 755 F.3d 279 (5th Cir. 2014). The Corrections Act was not at issue because the relevant claims arose prior to June 2008. *Id*. at 291 n.6. In a footnote, however, the court

7

commented on the plaintiff's other claims before the District Court, which arose after the enactment of the Corrections Act. Without deciding the issue, the *Allen* court observed that, "although the scope of the [Motor Carrier Act] Exemption to the [Fair Labor Standards Act] and the scope of the [Department of Transportation]'s regulatory jurisdiction are generally one and the same, there may be an exception to that rule following passage of the [Corrections Act]." *Id*. Continuing, the court explained that the Corrections Act "provides generally that, from the date of the act's enactment, June 6, 2008, the [Motor Carrier Act] exemption *does not apply* to employees who would otherwise fall within its ambit if the ["covered employee"] requirements are met." *Id*. (emphasis in the original). In other words, "covered employees" are entitled to overtime.

The Eighth Circuit case, *McCall v. Disabled American Veterans*, involved a motor carrier employee who, like McMaster does here, argued he was eligible for overtime because he was a Corrections Act "covered employee." *See* 723 F.3d 962 (8th Cir. 2013). The issue on appeal centered on whether the weight of the vehicles the plaintiff drove should, for purposes of determining whether he was a "covered employee," be measured according to their actual weight or according to their Gross Vehicle Weight Rating. *See id*. Finding the plaintiff was not a "covered employee" because he exclusively worked on vehicles with a Gross Vehicle Weight Rating over 10,000 pounds, the Eighth Circuit explained that "Gross Vehicle Weight Rating establishes an objective and predictable standard for determining whether the [Motor Carrier Act] Exemption applies." *Id*. at 966.

Rather than contest Congress's express carveout from

the Motor Carrier Act Exemption for "covered employees," Eastern relies on a series of district court cases holding that the Motor Carrier Act Exemption remains absolute after the Corrections Act. *See Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 500 (D. Md. 2010); *Dalton v. Sabo, Inc.*, 2010 WL 1325613, at *4 (D. Or. 2010); *Jaramillo v. Garda, Inc.*, 2012 WL 4955932, at *4 (N.D. Ill. 2012).[5] Each of these cases relies on a policy statement of the Seventh Circuit in 2009 that "[d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes." *See Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009). Indeed, our own jurisprudence has historically seen the Motor Carrier Act Exemption as establishing a strict separation between the Secretary of Transportation's jurisdiction and the ambit of the Fair Labor Standards Act overtime guarantee. *See Packard*,

---

[5] Eastern also points to *Buckner v. United Parcel Services, Inc.*, 2012 WL 1596726 (E.D.N.C. May 7, 2012) *aff'd without opinion*, 489 F. App'x 709 (4th Cir. 2012) *cert. denied,* 134 S. Ct. 70 (2013), which found a pro se plaintiff ineligible for overtime where his job consisted of driving cargo vans heavier and lighter than 10,000 pounds. Although the facts of *Buckner* parallel those of this case, there is no indication that the pro se plaintiff presented a Corrections Act argument to the District Court or the Fourth Circuit, and those courts' decisions do not show consideration of the Corrections Act sua sponte.

418 F.3d at 254 (rejecting argument that Motor Carrier Act Exemption applied only to drivers actually regulated by the Secretary of Transportation); *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992). Neither history nor policy, however, can overcome an express change to the statutory scheme.[6]

### III.

The Corrections Act says it plainly: "Section 7 of the Fair Labor Standards Act of 1938 . . . appl[ies] to a covered employee notwithstanding section 13(b)(1) of that Act." Corrections Act § 306(a). As McMaster meets the criteria of a "covered employee," she is entitled to overtime. We will therefore affirm the order of the District Court and remand for assessment of wages owed to McMaster and for additional proceedings relating to the other members of the conditional class.

---

[6] In any event, administrability is not an issue with respect to those employees who fall within the Motor Carrier Act Exemption but are not actually regulated by the Department of Transportation. As our former Chief Judge has noted, employees may fall within the Motor Carrier Act Exemption even where their work presents no reason for Department of Transportation regulation. *See Friedrich*, 974 F.2d at 421 (Sloviter, C.J., dissenting) ("[T]he driving done by these plaintiffs does not raise safety concerns any different than those raised by sales or repair persons who carry no such equipment. We are not dealing with truckers or bus operators here. The DOT itself recognized this distinction when it decided not to regulate lightweight vehicles such as automobiles.").