**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3704
_____

\* KIM POTOCZNY, as Executrix of the Estate
of Emil William Potoczny, Jr.,
Appellant

v.

AURORA LOAN SERVICES;
AURORA BANK FSB;
PHELAN HALLINAN & SCHMIEG

\*Pursuant to 43 (c)


_____

No. 15-1769
_____

KIM POTOCZNY, as Executrix of the Estate
of Emil William Potoczny, Jr.,
Appellant

v.

NATIONSTAR MORTGAGE;
PHELAN HALLINAN & SCHMIEG
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Nos. 2:12-cv-01251, 2:13-cv-03848)
District Judge:  Honorable Mary A. McLaughlin

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 11, 2015

Before: FUENTES, CHAGARES and GREENBERG, <u>Circuit Judges</u>.

(Filed: December 21, 2015)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Plaintiff Kim Potoczny[1] appeals the District Court's denial of her motion for summary judgment, and the District Court's grant of defendant Aurora Loan Services's ("ALS") and Aurora Bank FSB's (collectively, "Aurora"), Nationstar Mortgage's ("Nationstar"), and Phelan Hallinan & Schmieg's ("PHS") cross-motions for summary judgment. The consolidated cases before us present two primary issues: (1) whether Aurora and Nationstar, as holders of an indorsed-in-blank promissory note, violated certain debt collection statutes by seeking foreclosure on the mortgage securing that note; and (2) whether Aurora and Nationstar improperly charged escrow payments from Potoczny. For the reasons that follow, we will affirm the District Court's orders.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. In 2006, Emil W. Potoczny, Jr. executed a $100,000 promissory note to Home Loan Center d/b/a LendingTree ("LendingTree"), which was secured by a

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Appellant Kim Potoczny is acting as executrix of the estate of Emil W. Potoczny, Jr., and was substituted in his place in the District Court actions and the instant appeals. We will refer to Kim Potoczny and Emil W. Potoczny, Jr. as "Potoczny" interchangeably.

2

residential mortgage. Under the terms of the mortgage agreement, LendingTree was the originating mortgage lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") was to act as their nominee. LendingTree also agreed to waive collection of escrow for property taxes and insurance premiums. However, the mortgage agreement provided that, at any time, the lender could unilaterally revoke the escrow waiver by providing written notice to Potoczny. With escrow payments waived, Potoczny's monthly payments were approximately $717.00, which included his contractual principal and interest payments.

Shortly thereafter, a series of changes were made regarding the servicing of the loan, possession of the note, and assignment of the mortgage. First, in 2006, LendingTree transferred servicing of the loan to ALS, who then transferred servicing to Nationstar in 2012. Second, there were multiple changes in the possession of the note between 2006 and 2010. After the note was indorsed to Lehman Brothers Bank, FSB, and then Lehman Brothers Holdings Inc., it was indorsed in blank. By December 2010, Aurora had possession of the indorsed-in-blank note. Nationstar had possession by July 2012. Third, a series of transactions purported to assign the mortgage. In 2011, MERS, acting as the lender's nominee, assigned the mortgage to ALS. And in 2012, ALS assigned the mortgage to Nationstar. Potoczny disputes the validity of these assignments.

Significantly, in October 2009, Potoczny agreed to and executed a temporary Home Affordable Modification Trial Period Plan (the "Trial Plan"), which would have modified his mortgage if Aurora (who was identified in the Trial Plan as the "Lender or Servicer") were to execute the Trial Plan during the trial period. The Trial Plan explicitly

3

provided that it "constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked and [Potoczny] ha[s] been advised of the amount needed to fund [his] escrow account, and [Potoczny] agree[s] to the establishment of an escrow account." App. 168. Potoczny began making escrow payments, increasing his monthly payments to approximately $837 — the amount identified and required under the Trial Plan. Aurora, however, did not return a fully executed copy during the trial period, and the Trial Plan expired in 2010. After the expiration of the Trial Plan, Potoczny again began making monthly payments of approximately $717.[2]

By early 2011, Potoczny was in default. On November 23, 2011, Aurora commenced foreclosure proceedings in Pennsylvania state court. Potoczny then filed the instant federal court actions. In the first action (the "Aurora Action"), Potoczny alleges that Aurora and PHS, as Aurora's counsel, violated the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (the "FDCPA"), Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. §§ 2270.1–2270.6 (the "FCEUA"), Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1 to 201-9.3 (the "UTPCPL"), and committed breach of contract under Pennsylvania common law. In the second action (the "Nationstar Action"), Potoczny makes analogous allegations under the FDCPA, the FCEUA, and the UTPCPL against Aurora's successor, Nationstar.

_____

[2] A November 2009 escrow account statement, however, listed the monthly payment due, including escrow, as approximately $1,416.19. There is no indication that Potoczny ever paid that amount, but at least one statement (after Potoczny had defaulted) sought $1,416.19. See Potoczny v. Aurora Loan Servs., LLC, 33 F. Supp. 3d 554, 567 n.21 (E.D. Pa. 2014).

4

The District Court denied Potoczny's motion for summary judgment, and granted the defendants' cross-motions for summary judgment. Potoczny timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291 to review a final decision of a district court. We review a district court's grant of summary judgment de novo. See McMaster v. E. Armored Servs., 780 F.3d 167, 169 n.2 (3d Cir. 2015). Summary judgment is appropriate "if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (quotation marks and alteration marks omitted); see also Fed. R. Civ. P. 56(a).

## III.

### A.

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Potoczny argues that the defendants violated this section of the FDCPA when they sought to foreclose on a debt they "did not own." Potoczny Br. 3. We hold, as did the District Court, that by virtue of their possession of the indorsed-in-blank promissory note, Aurora and Nationstar were entitled to enforce the note and initiate foreclosure proceedings. Therefore, the District Court properly granted summary judgment.

5

Under Pennsylvania's Uniform Commercial Code ("PUCC"), a "[p]erson entitled to enforce" an instrument includes the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or even a person who is "not the owner of the instrument or is in wrongful possession of the instrument." 13 Pa. Cons. Stat. § 3301. Pennsylvania courts have routinely held that a note securing a mortgage is a negotiable instrument under PUCC, and when indorsed in blank, is enforceable by its possessor. See J.P. Morgan Chase Bank v. Murray, 63 A.3d 1258, 1266 (Pa. Super. Ct. 2013) ("[W]e conclude that the Note secured by the Mortgage in the instant case is a negotiable instrument under the PUCC. As such we find [the defendant's] challenges to the chain of possession by which [plaintiff] came to hold the Note immaterial to its enforceability."). See also In re Walker, 466 B.R. 271, 281-86 (Bankr. E.D. Pa. 2012) (holding that, where trustee had possession of an indorsed-in-blank note, trustee had right to enforce note).

Similarly here, prior to initiating foreclosure proceedings, Aurora and Nationstar had possession of the indorsed-in-blank promissory note, and thus they were entitled to enforce the note. And as they were entitled to enforce the note, Aurora and Nationstar were entitled to seek foreclosure. See, e.g., United States Bank, N.A. v. Pautenis, 118 A.3d 386, 393 n.8 (Pa. Super. Ct. 2015) ("Pursuant to our holding in [Murray], if the purported mortgagee establishes that it holds the original note, indorsed to it or in blank, it is entitled to enforce the note even in the face of questions regarding the chain of possession. If the purported mortgagee is unable to establish that it is the holder of the note or that the note is indorsed to it or in blank, the purported mortgagee may be

6

required to provide proof of the chain of possession to be entitled to proceed in the foreclosure action.").

It is immaterial whether there were defects in the assignment of the mortgage from MERS to Aurora. First, Aurora was the holder of the indorsed-in-blank note, and thus was entitled to enforce it in foreclosure proceedings even if there were defects in the chain of assignment. See, e.g., Murray, 63 A.3d at 1267 ("Should Appellee successfully establish that it holds the original Note, and that it is indorsed in blank, under the UCC it will be entitled to enforce the Note . . . even if there remain questions as to the chain of possession of the Note."). Second, as the District Court noted, "[b]ecause any payments made to the holder of the note will discharge a debtor's liability under the note, [Potoczny] cannot be harmed by paying the holder, even if the holder failed to comply with certain transfer requirements." Aurora Loan Servs., LLC, 33 F. Supp. 3d at 566 n.18. See also In re Walker, 466 B.R. at 285 ("If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue.").

Finally, it is worth noting that the language in the servicing agreement supports affirmance. Potoczny maintains that Aurora and Nationstar were merely servicers of the loan, and could, at most, act as an agent or designated custodian of the securitization trustee. Yet, the servicing agreement explicitly provides that:

> each Servicer shall have full power and authority . . . to do any and all things that it may deem necessary or desirable in connection with the servicing and administration of the Mortgage Loans, included but not limited to the power and authority . . . to effectuate foreclosure or other

7

conversion of the ownership of the Mortgaged Property securing any Mortgage Loan.

App. 115. <u>See</u> <u>also</u> <u>Potoczny v. Nationstar Mortgage, LLC</u>, 2015 WL 787699, at *2 (E.D. Pa. Feb. 25, 2015). Thus, even the terms of the servicing agreement provide that the loan servicers could effectuate foreclosure.

B.

Under the FDCPA, a debt collector is prohibited from using "unfair or unconscionable means" to collect or attempt to collect any debt, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Potoczny alleges that Aurora and PHS violated 15 U.S.C. § 1692f(1) by attempting to collect escrow fees because: (1) the escrow waiver had not been revoked, and (2) even if the waiver had been revoked, the $1,416.19 payment sought was greater than the $837.27 payment identified in the Trial Plan.

We hold, as did the District Court, that the escrow waiver had been revoked by late 2009. Potoczny received notice — by the signed Trial Plan and the 2009 escrow account statement — that Aurora intended to collect escrow payments. Further, Potoczny has not provided evidence that the $1,416 escrow payment was unauthorized or excessive, except for noting that it was a higher amount than that charged pursuant to the Trial Plan. However, the 2009 escrow amount statement indicated that with escrow payments, Potoczny's monthly payment would be $1,416.19. <u>See</u> <u>Aurora Loan Servs.</u>,

8

LLC, 33 F. Supp. 3d at 567 n.21.  Thus, we agree with the District Court that the grant of summary judgment was appropriate regarding Potoczny's claims alleging unauthorized and excessive escrow charges.[3]

IV.

For the foregoing reasons, we will affirm the District Court's orders denying Potoczny's motion for summary judgment, and granting defendants Aurora's, Nationstar's, and PHS's cross-motions for summary judgment.

---

[3] Our reasoning also applies to Potoczny's Pennsylvania state law claims, which are analogous to or derivative of the FDCPA claims here, see Aurora Loan Servs., LLC, 33 F. Supp. 3d at 568, and, accordingly, we will affirm the District Court's dismissal of those claims as well.