**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2469

MIA MASON, individually, and on behalf of all others similarly situated,

Plaintiff - Appellant,

v.

MACHINE ZONE, INC., a Delaware corporation,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, District Judge.  (1:15-cv-01107-JKB)

Argued:  January 24, 2017                     Decided:  March 17, 2017

Before AGEE, KEENAN, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED**: Alexander Glenn Tievsky, EDELSON PC, Chicago, Illinois, for Appellant. Michael Anthony Berta, Jr., ARNOLD & PORTER LLP, San Francisco, California, for Appellee.  **ON BRIEF**: Ryan D. Andrews, Roger Perlstadt, EDELSON PC, Chicago, Illinois, for Appellant.   Sean Morris, Los Angeles, California, Allyson Himelfarb, ARNOLD & PORTER LLP, Washington, D.C., for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Mia Mason, a Maryland resident, filed a class action complaint against Machine Zone, Inc. (Machine Zone), the developer of a mobile video game entitled "Game of War: Fire Age" (Game of War), pursuant to Federal Rule of Civil Procedure 23(b)(3). In her complaint, Mason asserted a claim under Maryland's gambling loss recovery statute (the Loss Recovery Statute), Md. Code Ann., Crim. Law § 12-110. According to Mason, she and thousands of similarly situated individuals lost money participating in an unlawful "gaming device," a component of Game of War that allows players to "spin" a virtual[1] wheel to win virtual prizes for use within that video game. Mason sought recovery of alleged gambling losses that she claims she and each member of the putative class incurred as a result of "spinning" the virtual wheel. She also asserted claims on her own behalf and for the alleged class under the California Penal Code, and the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, as well as a common law claim of unjust enrichment.

The district court dismissed Mason's complaint under Federal Rule of Civil Procedure 12(b)(6). The court concluded that Mason did not "lose money" when she "spun" the virtual wheel and that, therefore, she had failed to state a claim under the Loss Recovery Statute. The court similarly dismissed Mason's claims under the California Penal Code and the UCL, as well as her claim of unjust enrichment. Mason appeals only

---

[1] "Virtual" is defined as "not physically existing as such but made by software to appear to do so." *Virtual*, New Oxford American Dictionary (3d ed. 2010).

from the court's dismissal of her claim under the Loss Recovery Statute. Upon our review, we affirm the district court's judgment.

I.

Machine Zone developed and operates Game of War, a popular video game that can be "downloaded" without charge on various mobile devices.[2] Game of War is a game of strategy in which players build virtual towns and armies, and "battle" each other in "real time" in a virtual world. Players train their virtual armies, build their "empires," and join in alliances with other players, in an attempt to "conquer" the virtual world. While no payment is required to play Game of War, individuals engaged in playing the game can purchase virtual "gold," at prices ranging from $4.99 for 1,200 pieces of virtual gold, to $99.99 for 20,000 pieces of virtual gold. Players can use the virtual gold they have accumulated "to improve their virtual towns" and to progress more quickly in the game.

Players also can use their virtual gold to obtain virtual "chips" for use during one facet of the game called the Game of War casino (virtual casino, or Game of War casino). The virtual casino is a game of chance in which players can use their virtual chips for an opportunity to obtain virtual prizes for use within Game of War, by "spinning" a virtual

---

[2] Because the district court dismissed the complaint under Rule 12(b)(6), we recount the facts as alleged in the complaint. *See Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016). We also may consider documents attached as exhibits to the complaint, as well as any documents attached to the motion to dismiss, so long as those documents were integral to the complaint and are authentic. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164, 166 (4th Cir. 2016).

wheel. When a player interacts with the virtual casino for the first time, she is entitled to one free spin of the virtual wheel. However, after the player uses her first free spin, she must use at least 5,000 virtual chips for each additional spin. If a player does not have enough virtual chips to spin the virtual wheel, the player must use virtual gold to obtain additional virtual chips.

When a player spins the virtual wheel, an "animated light" rotates around the wheel and, after a few seconds, the light stops on a picture of a virtual prize. The virtual prizes include virtual "resources" such as "wood" or "stone," which players can use to advance their position in the game, as well as additional virtual chips or virtual gold. Virtual prizes also sometimes include an opportunity to play another game of chance within Game of War. For example, one virtual prize available from the virtual wheel is an opportunity for the player to select one of three virtual "treasure chests." The selected chest reveals either virtual chips, gold, or other resources.

Players who spin the virtual wheel have no control over the outcome of the spin and, thus, no skill on the part of the player influences what virtual prize the player will receive. Instead, the outcome of any given spin is determined by the factors that Machine Zone has programmed into the computer software governing the virtual casino. Machine Zone has "programmed the odds" of the virtual wheel to make it more likely that a player will receive "basic items," such as virtual resources, rather than virtual treasure chests, gold, and chips.

A player who accumulates a substantial number of the most coveted virtual prizes, such as virtual gold, can list her Game of War account for sale on a "secondary market."

4

The number and desirability of virtual prizes a player has acquired influence the cash value of the player's account on the secondary market. Players sell their accounts on eBay, Facebook, and other websites for hundreds, and sometimes thousands, of dollars. However, under Machine Zone's terms of service governing the use of Game of War, "Virtual Currency and Virtual Goods may never be redeemed for 'real world' money, goods or other items of monetary value from Machine Zone or any other person."

Mason began playing Game of War on her mobile device in early 2014. After using complimentary virtual chips for a chance to win a virtual prize at the Game of War casino, Mason began purchasing virtual gold in order to obtain more chips to continue interacting with the casino function. Between early 2014 and January 2015, Mason paid over $100 to participate in the virtual casino.

In seeking damages under the Loss Recovery Statute, Mason alleged that she lost money playing an unlawful "gaming device," namely, the Game of War casino, and sought "full disgorgement and restitution of any money [Machine Zone] has won" from Mason and from other Maryland residents who have lost money playing in the virtual casino. The district court concluded that Mason had failed to state a claim under the Loss Recovery Statute because "she did not lose money" in the virtual casino. The court similarly rejected Mason's assertion that her complaint stated claims under the California Penal Code, the UCL, and the theory of unjust enrichment. The court accordingly dismissed Mason's complaint in its entirety.

## II.

Mason argues that the district court erred in dismissing pursuant to Rule 12(b)(6) her claim under the Loss Recovery Statute. She contends that she lost money while playing in the virtual casino, which she asserts is an unlawful "gaming device" within the meaning of the Loss Recovery Statute. Mason maintains that she lost money in the virtual casino because, after paying money to "spin" the virtual wheel, she "'won' prizes that were worth less than the amount of money she spent to spin the wheel." Therefore, according to Mason, she is entitled to recover the difference between the amount of money she paid to spin the virtual wheel, and the monetary value of the virtual prizes she won. We disagree with Mason's arguments.

We review de novo the district court's dismissal of the complaint under Rule 12(b)(6), accepting Mason's well-pleaded allegations as true and drawing all reasonable inferences in her favor. *See Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016). Under Maryland's Loss Recovery Statute, "[a] person who loses money at a [prohibited] gaming device . . . may recover the money as if it were a common debt." Md. Code Ann., Crim. Law § 12-110(a). A "gaming device" is defined as "a game or device at which money or any other thing or consideration of value is bet, wagered, or gambled," and includes a "wheel of fortune." *Id.* § 12-101(d)(1)(ii), (d)(2).

As directed by the Maryland legislature, our review of a claim under the Loss Recovery Statute requires us to interpret Maryland's gambling statutes in a manner that "give[s] validity not only to the word, but to the spirit of the law." *F.A.C.E. Trading, Inc. v. Todd*, 903 A.2d 348, 355 (Md. 2006) (quoting *Gaither v. Cate*, 144 A. 239, 240 (Md.

6

1929)) (citing Md. Code Ann., Crim. Law § 12-113). Thus, we must construe liberally the Maryland statutes addressing various gambling activities to prevent the unlawful conduct that the Maryland legislature intended to proscribe. *Id.* at 356 (citation omitted).

For purposes of this appeal, we assume, without deciding, that the virtual casino is a prohibited "gaming device." *See* Md. Code Ann., Crim. Law § 12-101(d). We agree with the district court's conclusion that Mason did not "lose[ ] money" when participating in the virtual casino and that, therefore, she failed to satisfy a required element for stating a claim under the Loss Recovery Statute. *See id.* § 12-110(a).

Initially, we observe that the requirement in the Loss Recovery Statute that a person "lose[ ] money" suggests that a claim cognizable under the Statute also involves a winner of the money that Mason seeks to recover. *See Cates v. State*, 320 A.2d 75, 80 (Md. Ct. Spec. App. 1974) (noting that predecessor to Loss Recovery Statute encompassed a public policy "not to help one who loses at gambling, but to discourage illegal gambling by putting the winner on notice that the courts will . . . force him to disgorge his winnings"). However, if Mason received in the virtual casino "resources" of lesser "value" than virtual gold, as she claims she did, Machine Zone did not win money as a result. Nor did Machine Zone lose money if Mason "spun" the virtual wheel and received any particular prize. Indeed, Machine Zone retained the money that Mason paid to obtain virtual gold regardless of the outcome of Mason's spin of the virtual wheel.

Instead of losing money in the virtual casino, Mason paid money to obtain virtual gold, which she later used to accrue virtual chips, all while playing Game of War on her mobile device. Later, when Mason participated in the virtual casino, she used only

7

virtual chips, which are not redeemable for money. Thus, when Mason "spun" the virtual wheel, there was no money at stake. Rather, as a result of that action, she only could receive either virtual gold, which she concedes does not amount to money, or she could receive other virtual resources that likewise were not money or redeemable for money. Accordingly, based on the manner in which the Game of War casino operates, Mason could not have lost or won money as a result of her participation in that virtual activity.

While we must liberally construe Maryland's statutes relating to gambling, *see* Md. Code Ann., Crim. Law § 12-113; *F.A.C.E. Trading*, 903 A.2d at 355, we nevertheless are required to interpret unambiguous statutory provisions in accordance with their plainly expressed language, *Stoddard v. State*, 911 A.2d 1245, 1249-50 (Md. 2006) (citations omitted). The statutory term "money," as employed in the Loss Recovery Statute, is unambiguous and does not encompass virtual resources available and used only within Game of War. *See Money*, Black's Law Dictionary (10th ed. 2014) (defining "money" as "[t]he medium of exchange authorized by a government as part of its currency," and "[a]ssets that can be easily converted to cash"). Such a construction would improperly expand the reach of the Loss Recovery Statute. *See Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 469 (Md. 1988) (noting that the Loss Recovery Statute provides "a civil remedy that allows the gambler to recover any money lost"). *Compare* Md. Code Ann., Crim. Law § 12-110, *with id.* § 12-101(d)(1)(ii) (referring to "money or any other thing or consideration of value" in defining "gaming device"). Therefore, we hold that there is no basis in the text of the Loss Recovery Statute for applying the term

8

"money" to include virtual gold and other virtual resources that Mason received while interacting with the Game of War casino.

Our conclusion is not affected by Mason's contention that because Game of War participants can sell their accounts in a "secondary market," "money" is at stake when a player "spins" the virtual wheel in the virtual casino. Virtual gold and virtual chips are not sold on the secondary market and, therefore, are not equivalent to money.[3] Instead, players sell in the secondary market their entire accounts, which include their levels of advancement in the game. Also, notably absent from Mason's complaint is any allegation that she ever attempted to sell her own account or any virtual objects on the secondary market. Thus, we reject Mason's contention that the existence of a secondary market shows that she lost money as a result of her participation in the virtual casino.

Accordingly, we hold that the district court correctly concluded that Mason did not "lose[ ] money" within the meaning of the Loss Recovery Statute as a result of her participation in the Game of War casino. *See* Md. Code Ann., Crim. Law § 12-110. Therefore, as the district court ultimately held, Mason failed to state a claim under Maryland's Loss Recovery Statute.

---

[3] Additionally, as noted above, any attempt to sell virtual items on a secondary market is a violation of Machine Zone's terms of service, which prohibit people who play Game of War from redeeming "Virtual Currency and Virtual Goods . . . for 'real world' money, goods or other items of monetary value from . . . any other person."

## III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*