**PUBLISHED**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**No. 16-2213**

_____

RONALD J. SCHILLING, JR.; RUSSELL E. DOLAN; JONATHAN A. HECKER, Individually and On Behalf of Other Similarly Situated Employees,

        Plaintiffs - Appellants,

v.

SCHMIDT BAKING COMPANY, INC.,

        Defendant - Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:16-cv-02498-JFM)

_____

Argued: September 13, 2017                Decided: November 17, 2017

_____

Before AGEE, KEENAN, and HARRIS, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Agee and Judge Harris joined.

_____

**ARGUED:** Benjamin Leon Davis, III, LAW OFFICES OF PETER T. NICHOLL, Baltimore, Maryland, for Appellants. Anthony Walter Kraus, MILES & STOCKBRIDGE P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** James A. Lanier, LAW OFFICES OF PETER T. NICHOLL, Baltimore, Maryland, for Appellants. Kathleen A. Pontone, Amber Jackson, MILES & STOCKBRIDGE P.C., Baltimore, Maryland, for Appellee.

_____

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in dismissing a complaint filed by three individuals against their former employer, Schmidt Baking Company, Inc., under the Fair Labor Standards Act (the FLSA), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. Art. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. Art. § 3-501 *et seq.* Professional motor carriers, like Schmidt Baking Company, generally are exempt from the FLSA's requirement that employers pay "overtime" wages for hours worked in excess of 40 hours per week. However, Congress recently waived this exemption for motor carrier employees whose work, in whole or in part, affects the safety of vehicles weighing 10,000 pounds or less. Upon our review, we conclude that the plaintiffs fall within the group of employees protected by the above waiver and, thus, are entitled to overtime wages for hours worked in excess of 40 hours per week. We therefore reverse the district court's dismissal of the plaintiffs' FLSA claims, but affirm the court's dismissal of the plaintiffs' separate claims brought under Maryland law.

I.

The plaintiffs, Ronald Schilling, Russell Dolan, and Jonathan Hecker (collectively, the plaintiffs), worked as district sales managers for the defendant, Schmidt Baking Company, Inc. (Schmidt), for a period of time after 2008. The plaintiffs were nonexempt salaried employees and frequently worked more than 40 hours in a given week. For all

2

hours worked, the plaintiffs were paid at the regular wage rate, and were not paid overtime wages for hours worked in excess of 40 hours per week.

During the plaintiffs' employment, Schmidt provided baked goods to restaurants, grocery stores, and other small businesses across several states in the Mid-Atlantic region. Schmidt entered into contracts with independent operators who executed some of these deliveries. Those contract operators owned or leased "box trucks," which weighed over 10,000 pounds, to move the goods throughout the delivery network. Schmidt also maintained a limited number of company vehicles at each of its depots. This fleet included trucks of a variety of sizes, some weighing less and some weighing more than 10,000 pounds.

When the various operators were unable to complete their deliveries, the plaintiffs often were required to perform those deliveries. Because of the quantity of deliveries and the limited number of drivers, the plaintiffs spent between 65% and 85% of their time each week making deliveries. The type of vehicles the plaintiffs used to make the deliveries varied according to the delivery requirements of a given day, but the plaintiffs used their personal vehicles for between 70% and 90% of the deliveries they made. Each of the plaintiffs' personal vehicles weighed less than 10,000 pounds.

The plaintiffs filed the present federal action under the FLSA, the Maryland Wage and Hour Law (the MWHL), and the Maryland Wage Payment and Collection Law (the MWPCL). The plaintiffs allege that they were entitled to payment of overtime wages for hours worked in excess of 40 hours per week. Schmidt moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary

3

judgment under Rule 56. The district court treated Schmidt's motion as a motion to dismiss and granted the motion without a hearing. This appeal followed.

## II.

We review de novo the district court's dismissal of the complaint under Rule 12(b)(6), accepting the plaintiffs' well-pleaded allegations as true and drawing all reasonable inferences in the plaintiffs' favor. *Mason v. Machine Zone, Inc.*, 851 F.3d 315, 319 (4th Cir. 2017). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

## A.

We begin with an overview of the statutory scheme at issue in this case. In the midst of the Great Depression, Congress enacted the FLSA to combat the "evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health." S. Rep. No. 75–884, at 4 (1937). Congress intended that the FLSA "protect 'the rights of those who toil.'" *Benhoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944), *superseded in part by statute*, 29 U.S.C. § 254(a) (1947)). To that end, the FLSA establishes a federal minimum wage and requires employers to pay "a rate not less than one and one-half times the regular rate" to employees who work more than 40 hours in a single workweek. 29 U.S.C. §§ 206(a), 207(a)(1).

4

The FLSA, however, exempts certain classes of employees from its overtime protections. *See* 29 U.S.C. § 213. One such exemption is the Motor Carrier Act (MCA) Exemption, the scope of which is defined by reference to the MCA. The MCA grants the Department of Transportation (the DOT) regulatory authority over the maximum hours of service for employees of "a motor private carrier." 49 U.S.C. § 31502(b)(2). The MCA Exemption provides that the FLSA's overtime-wage requirements do not apply to "any employee with respect to whom the Secretary of Transportation [DOT] has the power to establish qualifications and maximum hours of service," meaning, any employee subject to the MCA. *See* 29 U.S.C. § 213(b)(1); *see also* 49 U.S.C. §§ 31502(b), 13102 (defining the scope of the Secretary of Transportation's regulatory authority).

In 2005, Congress passed an amendment to the MCA called the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU).[1] The SAFETEA-LU amended the MCA to apply only to carriers using "commercial motor vehicles," that is, vehicles weighing at least 10,001 pounds. *See* SAFETEA-LU § 4142(a), 119 Stat. at 1747. Consequently, for those persons or entities who operated vehicles weighing 10,000 pounds or less, the DOT had no regulatory authority and the MCA Exemption in the FLSA would not apply. These carriers thus were subject to the FLSA's overtime requirements.

---

[1] The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Pub. L. No. 109–59, 119 Stat. 1144 (2005).

In June 2008, however, Congress enacted the SAFETEA–LU Technical Corrections Act of 2008 (TCA).[2] As relevant here, Section 305 of the TCA reinstated the pre-SAFETEA-LU definition of "motor carrier." This correction restored the Secretary of Transportation's authority to regulate motor carriers, regardless of the weight of the vehicle driven. *See* 49 U.S.C. § 13102(16) (2008) (defining "motor vehicle").

Despite this broadening of the DOT's regulatory authority, the TCA also amended the FLSA to narrow the class of employees covered by the MCA Exemption. Section 306(a) of the TCA provides that "[S]ection 7 of the Fair Labor Standards Act [imposing overtime compensation requirements] . . . shall apply to a covered employee notwithstanding section 13(b)(1) of that Act [the MCA Exemption]." Tech. Corrections Act, § 306(a). Thus, even if an employer is subject to the jurisdiction of the Secretary of Transportation, that employer still may be obligated to pay its employees overtime wages if the employees meet the TCA's definition of a "covered employee." In relevant part, the TCA defines a "covered employee" as "an individual":

(1)     who is employed by a motor carrier or motor private carrier . . . ;

(2)     whose work, *in whole or in part*, is defined—

    (A)     as that of a driver, driver's helper, loader, or mechanic; and

    (B)     as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ; and

[2] SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572.

(3)     who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id*. § 306(c), 122 Stat. at 1621 (emphasis added).

B.

The central issue on appeal is whether the plaintiffs are "covered employees" under the TCA, entitling them to overtime compensation under the FLSA. Schmidt argues that because the plaintiffs worked on a mixed fleet, or a fleet consisting of vehicles weighing both more and less than 10,000 pounds, the plaintiffs were subject to the MCA Exemption and, therefore, were not entitled to overtime compensation. In Schmidt's view, if an employee spends more than a *de minimis* amount of time operating large vehicles, the TCA exception does not apply.

In response, the plaintiffs contend that they qualified for the TCA exception to the MCA Exemption. The plaintiffs argue that because a "covered employee" is an employee who drives small vehicles "in whole or in part," and because the plaintiffs spent 70% to 90% of the time they spent making deliveries driving small vehicles, the plaintiffs plainly satisfied the statutory definition. Therefore, the plaintiffs claim, they were entitled to overtime wages for hours worked in excess of 40 hours per week. We agree with the plaintiffs' arguments.

The precise issue before us already has been considered by one of our sister circuits, which held in favor of the plaintiff litigant. In *McMasters v. Eastern Armored Services, Inc.*, 780 F.3d 167 (3d Cir. 2015), the Third Circuit held that a driver employed by a motor carrier was entitled to overtime compensation under the FLSA because she

spent part of her work week driving a vehicle weighing less than 10,000 pounds. In *McMasters*, the plaintiff's duties consisted of driving armored vehicles of varying weights within the defendant's mixed fleet. *Id.* at 168. The Third Circuit reasoned that because the plaintiff spent 51% of her work days working on vehicles weighing 10,001 pounds or more, and 49% of her work days working on vehicles weighing 10,000 pounds or less, her job placed her "squarely within" the TCA's requirement of working "in whole or in part" on smaller vehicles. *Id.* at 168–70. The Third Circuit declined to establish a strict definition of the phrase "in part," noting that, whatever the term "in part" means, the plaintiff "certainly satisfied" that standard because she spent nearly half of her day driving vehicles weighing less than 10,000 pounds. *Id.* at 170 n.4.

We agree with the Third Circuit's reasoning. The issue whether the plaintiffs before us were "covered employees" within the meaning of the TCA presents a question of statutory interpretation. When interpreting a statute, we first consider the plain meaning of the statutory language. *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). In examining a statute's plain meaning, we consider all the words employed and do not review isolated phrases. *United States v. Mitchell*, 518 F.3d 230, 233–34 (4th Cir. 2008). Our analysis of particular statutory language also is informed by "'the specific context in which that language is used, and the broader context of the statute as a whole.'" *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 530 (4th Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The text of the TCA plainly provides that employees working on mixed fleet vehicles are covered by the TCA exception. Section 306 of the TCA expressly amended

8

the FLSA by providing that overtime compensation would be available to "covered employee[s]" even when the MCA Exemption ordinarily would exempt those employees from the FLSA's overtime requirements. By stating in section 306(a) of the TCA that the TCA "shall" apply to covered employees, Congress mandated that even if the MCA Exemption applied to certain drivers, those drivers nevertheless would be entitled to overtime compensation.[3]

The structure of the TCA exception also makes clear that an employee need only work on smaller vehicles "in part" to qualify for overtime compensation, thereby placing drivers of mixed fleets within the FLSA's requirements. Sections 306(c)(1), (2), and (3) of the TCA collectively list requirements that an employee must meet in order to be excepted from the MCA Exemption and entitled to overtime wages. The language of Section 306(c)(2), which modifies the two subsections that follow, refers to individuals "whose work, in whole or in part" meets the requirements of those subsections.

Subsection 306(c)(2)(A) describes the nature of the covered employee's job, as an employee "whose work, in whole or in part, is defined [] as that of a driver, driver's helper, loader, or mechanic[.]" Thus, by using the phrase "in part," the statute does not require that an employee perform one of the listed jobs during all working hours.

---

[3] Schmidt argues that this interpretation of the text would conflict with Congress's past efforts to prevent dual jurisdiction of both the Departments of Labor and Transportation over drivers employed by motor carriers. However, insofar as the TCA conflicts with that policy consideration, we are bound by the language Congress used. In the TCA, Congress expressly and clearly provided that covered employees are entitled to overtime compensation notwithstanding the fact that such employees may also be subject to regulation by the DOT.

Instead, an employee satisfies subsection 306(c)(2)(A) if she works as a driver, driver's helper, loader, or mechanic for a portion of her working hours.

Similarly, subsection 306(c)(2)(B) describes the effect of an employee's work, meaning that a covered employee is one "whose work, in whole or in part, is defined [] as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ." A covered employee's work must therefore, *entirely or partially*, affect the operational safety of vehicles weighing less than 10,000 pounds.

There is nothing in the language or structure of the statute indicating that Congress intended to limit the reach of the TCA to exclude employees working on mixed fleets of vehicles. For example, if Congress had intended for employees working on mixed fleets to be exempt from overtime compensation requirements, Congress could have made the current content of subsection 306(c)(2)(B) its own separate section, with the effect that the term "in whole or in part" would not modify the phrase "motor vehicles weighing 10,000 pounds or less." But Congress did not do so. Likewise, if Congress had intended to exclude mixed fleet employees from the FLSA's overtime compensation requirements, it could have made that intent explicit in Section 306(c)(3), by defining a "covered employee" as an employee "who *exclusively* performs duties on motor vehicles weighing 10,000 pounds or less." But, again, Congress did not do so.

We also observe that the purpose of the FLSA is "remedial" in nature. *Tenn. Coal*, 321 U.S. at 597; *Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011). Consistent with that purpose, we construe the FLSA liberally, "recognizing that

10

broad coverage is essential" to accomplish the statute's goals. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985); *see Purdham*, 637 F.3d at 427 ("[T]he Supreme Court has cautioned that the FLSA 'must not be interpreted or applied in a narrow, grudging manner.'" (quoting *Tenn. Coal*, 321 U.S. at 597)). Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."[4] *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

We therefore hold that the plaintiffs were entitled to FLSA overtime wages for hours worked in excess of 40 hours per week. The plaintiffs easily satisfied the requirements of Section 306(c)(2). The plaintiffs spent the majority of their working hours making deliveries, and between 70% and 90% of their delivery trips were made on vehicles indisputably weighing less than 10,000 pounds. The plaintiffs' delivery routes included interstate trips on public highways, and none of the vehicles were designed to transport eight or more passengers or were used to transport hazardous materials.[5]

---

[4] We acknowledge that the MCA also is a remedial statute intended to promote public safety. *See Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661–62 (1947). As in the TCA, however, Congress can alter the scope of the MCA Exemption through later legislation. *Id.* Here, aware of the MCA's remedial purpose, Congress calibrated the balance between the FLSA and the MCA by allowing "covered employees" to receive overtime compensation under the FLSA while also being subject to the jurisdiction of the DOT.

[5] In light of the substantial percentage of time the plaintiffs spent driving small vehicles, we follow the Third Circuit's approach and elect not to define the phrase "in part." *See McMasters*, 780 F.3d at 170 n.4.

11

Therefore, the plaintiffs were "covered employees" under the FLSA during their employment with Schmidt.[6]

### III.

The plaintiffs also appeal the district court's dismissal of their claims for overtime wages under Maryland law. The FLSA and the Maryland statutory schemes are largely congruent, and ordinarily claims brought pursuant to the MWHL succeed or fail together with claims brought under the FLSA. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 775 n.10 (4th Cir. 2017). The present case, however, presents an exception to this general principle.

The MWHL, tracking the MCA Exemption in the FLSA, also contains an exemption that excludes from overtime protection employees for whom the DOT sets qualifications and maximum hours of service. *See* Md. Code Ann., Lab. & Empl. § 3–415(c)(1). However, the MWHL does not contain an exception to the exemption similar to that created by the TCA.

At oral argument, the plaintiffs conceded that were it not for the TCA's exception to the MCA Exemption, the plaintiffs would be excluded from the FLSA's overtime compensation requirements. And we will not read into Maryland's statutory scheme an exception similar to the TCA exception when one does not exist. Accordingly, we

---

[6] At this stage in the proceedings, we do not express an opinion regarding the proper calculation of overtime wages owing to the plaintiffs based on the term of their employment with Schmidt.

12

conclude that the district court properly dismissed the plaintiffs' claims for overtime wages brought under Maryland law.[7]

IV.

For these reasons, we vacate the district court's order dismissing the plaintiffs' claims for overtime wages under the FLSA, affirm the dismissal of the plaintiffs' state-law claims, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[7] The plaintiffs' claim under the MWPCL likewise fails. It is well established that the MWPCL "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 819 A.2d 354, 362 (Md. 2003). It is the MWHL, and not the MWPCL, that is the state's equivalent of the FLSA and shares the FLSA's purpose to provide a minimum wage and maximum hours for employees. Here, the plaintiffs claim entitlement to an increased amount of wages during their entire employment with Schmidt and do not allege that Schmidt failed to pay them wages upon their termination. Therefore, because the *substance* of the plaintiffs' claim invokes the protection of the MWHL, not the MWPCL, we affirm the district court's dismissal of the entirety of the plaintiffs' claims asserted under Maryland law.